### INDIANA DEPARTMENT OF NATURAL RESOURCES and State of Indiana, Appellants–Defendants,

v.

### LAKE GEORGE COTTAGERS ASSOCIATION, Appellee–Plaintiff.

No. 76A03–0708–CV–381.

Court of Appeals of Indiana.

June 30, 2008.

Steve Carter, Attorney General of Indiana, Elizabeth Rogers, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellants.

Karl L. Mulvaney, Nana Quay–Smith, Bingham McHale, LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

The Lake George Cottagers Association (hereinafter "the Association") sought a declaratory judgment the State [1] owns the real estate underneath a dam built in the 1930s and is therefore responsible for repairing it. The Association and the State both moved for summary judgment, and the trial court granted the Association's motion. We find the legislature could not have intended the Lake Preservation Act to confer on the State "a right, a title, or an interest in or to the property" where a dam is located.[2] Ind.Code § 14–27–7.5–4. We accordingly reverse and direct the entry of summary judgment for the State.[3]

1. The Department of Natural Resources (DNR), its predecessor agencies, and other State entities will be referred to as "the State."

2. Because we hold the State does not have an interest in the land under the dam, we do not address the Association's alternative arguments that 1) the State did not challenge one of two alternative bases for the summary judgment and therefore waived that argument on appeal, and 2) the State demonstrated its

"interest, right and control" over the dam by "modifying the dam to maintain its water lever for use by the public." (Br. of Appellee at 14.)

3. We heard oral argument on April 9, 2008 before the Sherman Minton Inn of Court in New Albany. We thank the Inn of Court for its hospitality and commend counsel for the quality of their advocacy.

## FACTS AND PROCEDURAL HISTORY

Lake George is a public freshwater lake,[4] part of which is located in Steuben County, Indiana. The Association was formed as a nonprofit corporation in 1927 for various purposes including promotion and preservation of Lake George and maintenance and preservation of the water level. An area at the south end of the Lake was called the Mill Pond. In 1928, a ten acre plot including the Mill Pond was conveyed to the Association. Sometime in the 1930s, the Dam was built on the Association's property at the south end of the Mill Pond to control the Lake's water level and prevent flooding of a nearby road.

The Association still has title to the real estate conveyed in 1928. In 1947 the legislature enacted the Lake Preservation Act, which gave the State "full power and control of all of the public freshwater lakes in Indiana" and provided the State "holds and controls all public freshwater lakes in trust for the use of all of the citizens of Indiana for recreational purposes." I.C. § 14–26–2–5(d).

The Association sought a declaratory judgment the State owned the Dam and the real estate underneath it. Both the State and the Association moved for summary judgment, and the trial court granted summary judgment for the Association.

## DISCUSSION AND DECISION

Our standard of review of a summary judgment ruling is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Row v. Holt,* 864 N.E.2d 1011, 1013 (Ind.2007). That the parties made cross-motions for summary judgment does not alter our standard of review. Instead, we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *State Farm Mut. Auto. Ins. Co. v. D'Angelo,* 875 N.E.2d 789, 795 (Ind.Ct.App.2007), *trans. denied.*

I.C. § 14–26–2–5(d) provides the State "has full power and control of all of the public freshwater lakes in Indiana" and "holds and controls all public freshwater lakes in trust for the use of all of the citizens of Indiana for recreational purposes." The parties agree Lake George is a "public freshwater lake."

An "owner" of a dam is "an association, . . . a trustee, the state, an agency of the state, . . . or any other person who has a right, a title, or an interest in or to the property upon which the structure is located." I.C. § 14–27–7.5–4. The owner of a dam is obliged to "maintain and keep the structure in the state of repair and operating condition. . . ." I.C. § 14–27–7.5–7. The trial court determined the State "holds title to the real estate beneath the Mill Pond Dam in trust for the use and benefit of its citizens," or in the alternative "clearly has the right to control the uses made of the Mill Pond lake bed and, therefore, does have an interest in the lake bed." (App. at 287.)

██ We believe the legislature could not have intended that Chapter 14–26–2 (the "Lake Preservation Act") confer on the State an ownership interest in land under a dam adjacent to a public freshwater lake. Rather, we agree the Act gives the State

> the right *only* to regulate and control, and hold in trust "public freshwater lakes" for the use of all citizens of

---

**4.** A "public freshwater lake" for purposes of the Lake Preservation Act is "a lake that has been used by the public with the acquiescence of a riparian owner." I.C. § 14–26–2–3.

Indiana.... There is no language in the Lake Preservation Act that declares the State of Indiana the "owner" of "public freshwater lakes" or more specifically of any structures adjacent to public freshwater lakes in Indiana.

(Br. of Appellant at 11) (emphasis in original).[5]

To support its argument it has only "limited control" over public freshwater lakes to regulate the public's use, (*id.*), the State notes other statutory sections addressing the DNR's enforcement and inspection powers. For example, I.C. § 14–27–7.5–8 [6] provides the DNR has "jurisdiction and supervision over the maintenance and repair of" dams in, on, or along lakes in Indiana, and "shall exercise care to see that the structures are maintained in a good and sufficient state of repair and operating condition to fully perform the intended purpose." If a dam becomes. so dangerous that the DNR believes "there is not sufficient time for the issuance and enforcement of an order for the maintenance, alteration, repair, reconstruction, change in construction or location, or removal" of the dam, the DNR may immediately take emergency measures and recover the cost *"from the owner* by appropriate legal action." I.C. § 14–27–7.5–12 (emphasis supplied). The DNR may issue a notice of violation if the DNR finds a dam is not sufficiently strong, not adequately maintained, or otherwise unsafe. I.C. § 14–27–7.5–11. The State characterizes these statutes as "regulatory enforcement tools to ensure that dams in Indiana are safe," (Br. of Appellant at 13), and asserts these statutes place the burden of dam repair and maintenance on the owner of the dam, but do not equate to State ownership of dams.

▮ When the legislature enacts a statute, we presume it is aware of existing

---

**5.** We acknowledge *dictum* in *Parkison v. McCue*, 831 N.E.2d 118, 130 (Ind.Ct.App. 2005), *trans. denied sub nom Kraus v. McCue*, 841 N.E.2d 191 (Ind.2005), that "Under Indiana Code Section 14–26–2–5 ... the State of Indiana *holds title to* Clear Lake...." *Parkison* did not hold, and could not have held, the Lake Preservation Act had the effect of conveying to the State legal title to public lakes. *Parkison* involved a dispute between lakefront property owners and back lot owners over the permissible uses of an easement to a beach. The trial court determined the scope of the easement did not include construction of structures on it; rather, the easement was for ingress and egress to the lake by the back lot owners. The State was not a party to the litigation and its right to the easement, or to any other property, was not at issue.

We determined the easement had been extinguished because it was underwater, but the back lot owners still had a right to use the lake for recreational purposes:

> while ... back lot owners may enjoy walking in the water along the shoreline, the right to do so no longer originates from the dedication, but rather under Indiana stat-

ute. Under Indiana Code Section 14–26–2–5, citizens may enjoy public waters for recreational purposes. As a public lake, the State of Indiana holds title to Clear Lake, and riparian owners do not have an exclusive right to any part of the lake. *Id.* Accordingly, the right of back lot owners to walk in the shallow waters of Clear Lake is the same right as any citizen.

The *Parkison* reasoning accordingly demonstrates the Act was intended to protect the public's right to enjoy public freshwater lakes for recreational purposes, and not to transfer to the State legal title to the land underneath such lakes. In context, our reference to the State's "title" is not a reference to "legal" title, but rather is to be read in a more general sense as "something that justifies or substantiates a claim" or "a ground of right," Webster's Third New International Dictionary 2400 (1976), specifically in the case before us the State's right to monitor, inspect, and regulate dams on public freshwater lakes as set forth by the legislature.

**6.** The State directs us to I.C. § 14–27–7.8–8. There does not appear to be any such chapter in the Code. The language the State quotes is found in section 14–27–7.5–8.

statutes in the same area. *Orndorff v. New Albany Housing Authority*, 843 N.E.2d 592, 594 (Ind.Ct.App.2006), *trans. denied* 860 N.E.2d 584 (Ind.2006). If the legislature had intended to acquire ownership of public freshwater lakes via the Lake Preservation Act, it would not have subsequently enacted a statutory scheme to authorize its "jurisdiction and supervision over the maintenance and repair of" dams it already owned. Nor would it have promulgated statutes to permit the DNR to issue notices of violations to itself or to recover from itself the cost of emergency measures.

The State also notes Article 14–33, which addresses Conservancy Districts, provides multiple methods to fund improvements to dams: "If the legislature had intended that the Lake Preservation Act be interpreted as State ownership of all dams on 'public freshwater lakes,' it would not have provided these other funding mechanisms." (Br. of Appellant at 13.)

Our decisions have similarly indicated the State's authority under the Lake Preservation Act is not an "ownership" interest. *See Lake of the Woods v. Ralston*, 748 N.E.2d 396, 401 (Ind.Ct.App.2001) (public trust legislation, specifically I.C. § 14–26–2–5, modified common law riparian rights [7] by recognizing the public's right to preserve the natural scenic beauty of our lakes and to recreational values upon the lakes), *trans. denied* 761 N.E.2d 419 (Ind.2001). Therein we addressed one of the State's interests:

> The government is interested in establishing a water level which insures (1) that the public exercises its vested right to the preservation, protection, enjoyment, and recreational use of a public freshwater lake; (2) that the State exer-

cises its duty as it holds and controls all public freshwater lakes in trust for the public; and (3) that riparian owners exercise their right to use of the lake to the fullest, responsible extent possible. *Id.* at 403.

The State did not become an "owner" of the land under the Mill Pond Dam by conveyance, by virtue of the Lake Preservation Act, or otherwise. Summary judgment for the Association was therefore error, and we direct the entry of summary judgment for the State.

Reversed.

BAILEY, J., and BRADFORD, J., concur.

**7.** The State asserts, without explanation or citation to authority, "The Lake Preservation Act *has not changed the rights or titles of* riparian owners." (Br. of Appellant at 15) (emphasis supplied). We explicitly held otherwise in *Lake of the Woods*.