**CINCINNATI INSURANCE COMPANY, Appellant–Plaintiff,**

v.

**Anita G. ADKINS and Wayne Adkins, Appellees–Defendants.**

No. 29A02–0912–CV–1270.

Court of Appeals of Indiana.

Sept. 30, 2010.

David S. Wirth, Cincinnati, OH, Douglas H. Fisher, Indianapolis, IN, Attorneys for Appellant.

David W. Stewart, Michael J. Sobieray, Stewart & Stewart, Carmel, IN, Attorneys for Appellees.

## OPINION

MAY, Judge.

Cincinnati Insurance appeals summary judgment for Anita and Wayne Adkins (collectively, "Adkins"). Cincinnati argues the trial court erred in determining Adkins did not breach the terms of her insurance policy when she settled with a tortfeasor without notice to or consent of Cincinnati. We reverse.

### FACTS AND PROCEDURAL HISTORY

Anita Adkins was involved in an automobile accident with Emily Strack on November 21, 2006. Adkins had her "primary insurance," (App. at 48), with Safeco and an "umbrella" policy, (*id.*), with Cincinnati Insurance. The Cincinnati policy provided excess[1] underinsured motorist protection and had a coverage limit of one million dollars per occurrence. It provides that if an insured has rights to recover a payment Cincinnati makes under the policy, those rights are transferred to Cincinnati: "The 'insured' must do nothing after loss to impair them. At [Cincinnati's] request, the 'insured' will bring 'suit' or transfer

---

1. The policy did not insure Adkins for the required underlying primary coverage.

those rights to [Cincinnati] and help [Cincinnati] enforce them." (*Id.* at 30.)

Adkins reported the accident within a week to Consolidated Union, Cincinnati's agent. In April 2007, Strack's liability carrier offered Adkins $100,000, the policy limit, and Adkins accepted on May 22. Adkins did not report the settlement to Cincinnati,[2] which learned of it June 6, after Adkins had released Strack.

In November, Adkins accepted the policy limit of $150,000 from Safeco and then sought underinsured motorist coverage from Cincinnati. Cincinnati asked for a declaratory judgment whether Adkins breached the policy by settling with Strack without informing Cincinnati or seeking its consent. The parties made cross-motions for summary judgment and the trial court found for Adkins.

## DISCUSSION AND DECISION

■ Our standard of review[3] of a summary judgment ruling is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Ind. Dept. of Natural Res. v. Lake George Cottagers Ass'n,* 889 N.E.2d 361, 363 (Ind. Ct.App.2008), *trans. denied.* That the parties made cross-motions for summary judgment does not alter our standard of review. Instead, we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

■ The provisions of an insurance contract are subject to the same rules of construction as are other contracts, *Mikel*

*v. Am. Ambassador Cas. Co.,* 644 N.E.2d 168, 170 (Ind.Ct.App.1994), *trans. denied,* so the construction of Cincinnati's policy presents a pure question of law that we review *de novo.*

Ind.Code § 27–7–5–6 provides in pertinent part:

(a) The policy or endorsement affording the coverage specified in this chapter may also provide that payment to any person of sums as damages under such coverage shall operate to subrogate the insurer to any cause of action in tort which such person may have against any other person or organization legally responsible for the bodily injury or death, or property damage, because of which such payment is made. The insurer shall be subrogated, to the extent of such payment, to the proceeds of any settlement or judgment that may later result from the exercise of any rights of recovery of such person against any person or organization legally responsible for said bodily injury or death, or property damage, for which payment is made by the insurer. Such insurer may enforce such rights in its own name or in the name of the person to whom payment has been made, as in their interest may appear, by proper action in any court of competent jurisdiction.

(b) An insurer providing underinsured motorist coverage does not have a right of subrogation against an underinsured motorist if:

(1) the insurer has been provided with a written notice that:

(A) informs the insurer of the existence of a bona fide offer of

---

**2.** Adkins testified she was aware she had "business policies" with Cincinnati, but she did not know whether she had a Cincinnati policy that might cover her injuries from an auto accident. (App. at 63.)

**3.** Neither party provided a statement of the standard of review, as required by Ind. Appellate Rule 46(A)(8)(b) and 46(B).

agreement or settlement between its insured and the underinsured motorist; and

(B) includes a certification of the liability coverage limits of the underinsured motorist; and

(2) the insurer fails to advance payment to the insured in an amount equal to the amount provided for in the offer of agreement or settlement within thirty (30) days after the insurer receives the notice described in subdivision (1).

However, an insurer that, under the circumstances described in subdivision (1), advances payment to the insured in an amount equal to the amount provided for in the offer of agreement or settlement, has full rights of subrogation as provided in its policy or endorsement affording the underinsured motorist coverage.

■ Adkins' release of Strack after their settlement was a breach of Adkins' insurance contract with Cincinnati:

[A]n insured who destroys the insurer's contractual subrogation rights breaches the insurance contract and, as a result, extinguishes his right of action on the policy. An insured destroys the insurer's contractual subrogation right by releasing the tortfeasor prior to settling with the insurer because it is that very settlement which enables the insurer to protect its subrogation right by giving notice thereof to the tortfeasor.

*Tate v. Secura Ins.*, 587 N.E.2d 665, 670 (Ind.1992) (quoting *Allstate Ins. Co. v. Meek*, 489 N.E.2d 530, 533 (Ind.Ct.App. 1986)). The trial court interpreted the Cincinnati policy language that "[i]f the 'insured' has rights to recover all or part of *any payment 'we' have made* under this policy, those rights are transferred to 'us'," (App. at 30) (emphasis added) (internal quotation marks in original), to mean "there must be a payment made under the policy that the insured has a right to recover. Then, and only then, must the insured do nothing to impair subrogation rights." (*Id.* at 51.)

That interpretation is inconsistent with the plain language of the policy. The policy language is that "[t]he 'insured' must do nothing *after loss* to impair [Cincinnati's subrogation rights]." (*Id.* at 30) (emphasis added). As "loss" must necessarily happen before an insurer makes a payment under its policy,[4] it is apparent from the policy language that Adkins' obligation to notify Cincinnati and obtain its consent before settling with the tortfeasor arose at the time of the accident, not at some later date after Cincinnati made a payment.

In *Estate of Houser v. Motorists Ins. Co.*, 2002–Ohio–2845, 2002 WL 1299778 (Ohio Ct.App.2002), an excess commercial policy included a provision with language essentially identical to that in the policy before us: "If the insured has rights to recover all or part of any payment *we have made* under this policy, those rights are transferred to us. The insured must do nothing *after loss* to impair them." *Id.* ¶ 51 (emphasis supplied). The estate settled its claim against the tortfeasor without notifying the insurer until nineteen months after the settlement had been reached. "By settling the case with [the tortfeasor] without the notice and consent of [the insurer], the appellants have put at risk their own chance of recovery under the policy's UIM benefits." *Id.* ¶ 52. The court noted that when an insured executes a release that precludes an insurer from

---

4. The policy does not define "loss" or "date of loss." *But see Brunner v. Economy Preferred Ins. Co.*, 597 N.E.2d 1317, 1318–19 (Ind.Ct. App.1992) (equating "date of the loss" with "the date of the occurrence of the destructive event").

exercising its subrogation rights, the insured "materially breaches his insurance contract and discharges his insurer from its obligation to provide coverage" and is precluded from bringing an action against the insurer for underinsured motorist benefits. *Id.* ¶ 53. *And see Hockelberg v. Farm Bureau Ins. Co.,* 407 N.E.2d 1160, 1161 (Ind.Ct.App.1980) (where the insured releases his right of action against the wrongdoer before settlement with the insurer, the release destroys by operation of law his right of action on the policy).[5]

As Adkins' settlement with Strack "after loss" impaired Cincinnati's subrogation rights, Adkins breached the contract with Cincinnati and discharged Cincinnati from its obligation to provide coverage.[6] Cincinnati's motion for summary judgment should accordingly have been granted. We reverse and remand for entry of summary judgment for Cincinnati.

Reversed and remanded.

BAILEY, J., and BARNES, J., concur.

---

5. The *Hockelberg* policy provided:
   *In the event of any payment under this policy,* the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing *after loss* to prejudice such rights.
   407 N.E.2d at 1161 (emphasis supplied). There, the parties did not argue, and we did not address, whether the provision applied only after the insurer made a payment.

6. We acknowledge Adkins' allegation Cincinnati was not prejudiced by the loss of its right to subrogation against Strack because "the tortfeasor, Emily Strack is judgment proof."

(Br. of Appellee, Anita G. Adkins and Wayne Adkins at 13.) Adkins' counsel offers no legal authority to support the premise that absence of prejudice to the insurer necessarily excuses a breach of an insurance contract, or that an insurer in Cincinnati's position cannot be prejudiced when a tortfeasor in Strack's position is judgment-proof. We are therefore unable to consider that allegation of error. *See* Ind. Appellate Rule 46(A)(8)(a) ("argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must *be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on,* in accordance with Rule 22") (emphasis supplied); *Young v. Butts,* 685 N.E.2d 147, 150 (Ind.Ct.App.1997).