# FOR PUBLICATION



FILED

Aug 27 2013, 5:28 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**WILLIAM H. KELLEY**
**THADDEUS CRAIG KELLEY**
Kelley, Belcher & Brown
Bloomington, Indiana

ATTORNEYS FOR APPELLEE:

**JAMES C. TUCKER**
**MARILYN TUCKER FULLEN**
Tucker and Tucker, P.C.
Paoli, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CONSOLIDATED INSURANCE COMPANY, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) No. 59A05-1212-PL-632 |
| | ) | |
| NATIONAL WATER SERVICES, LLC, | ) | |
| | ) | |
| Appellee. | ) | |

**APPEAL FROM THE ORANGE CIRCUIT COURT**
The Honorable Larry R. Blanton, Judge
Cause No. 59C01-1110-PL-320

**August 27, 2013**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

In this interlocutory appeal, Consolidated Insurance Company ("CIC") appeals from the denial of its motion for judgment on the pleadings pursuant to Ind. Trial Rule 12(C) in favor of National Water Services, LLC ("NWS"). CIC raises one issue which we revise and restate as whether the court erred in denying its motion for judgment on the pleadings. We reverse and remand.

FACTS AND PROCEDURAL HISTORY

NWS obtained employee dishonesty coverage from CIC under Policy CBP8370511 ("the Policy"). The Policy contained the following provision as Section D, Paragraph 19 ("Paragraph 19"):

> **Transfer of Your Rights of Recovery Against Others to Us:** You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

Appellant's Appendix at 20. NWS suffered losses which were covered by the Policy and submitted a claim to CIC, and CIC ultimately denied coverage to NWS.[1]

On October 11, 2011, NWS filed a complaint in the Orange Circuit Court stating that it was entitled to recover $497,500.00 plus interest from CIC under the Policy. NWS attached a copy of the Policy to its complaint. On December 19, 2011, CIC filed its answer and third party complaint. In its answer portion, CIC noted as a defense that NWS "is barred from recovery because . . . [NWS] may have failed to protect and

---

[1] We note that the court's order in its Findings of Fact recites certain dates which, although discussed by the attorneys at the September 18, 2012 hearing, do not appear to be contained in the pleadings or CIC's Materials in Support of Motion for Judgment on Pleadings. Specifically, the court's order notes that the Policy was in effect from October 31, 2009 until September 15, 2010, that NWS submitted its claim to CIC on March 7, 2011, and that CIC denied NWS's claim on September 23, 2011, which, as discussed further below, was four days following the settlement between NWS and David Arnold, NWS's former employee, whose actions gave rise to the claim.

2

preserve [CIC's] subrogation rights under the policy" and that accordingly NWS should "take nothing by way of its Complaint . . . ." Id. at 39. CIC also stated a third-party complaint against David Arnold noting that NWS's "claim arises out of its allegations that [Arnold] did certain things that are allegedly covered by the [Policy] and that [NWS] has suffered damages as a result of such action" and that CIC "is therefore subrogated to the rights of [NWS] and may be entitled to recover against [Arnold]." Id. at 40.

On February 17, 2012, Arnold filed his answer to third-party complaint and counterclaim against NWS. In his answer, Arnold stated that NWS previously filed suit against him in the same court, and the action was removed to the United States District Court for the Southern District of Indiana, that the claims NWS asserted against him "form the basis of the claim against CIC in this cause," and that "[a]ll claims against [him] in the federal court action were released by NWS as part of a settlement." Id. at 43. Arnold also claimed the doctrine of release as an affirmative defense.[2] On March 22, 2012, NWS filed its reply to Arnold's counterclaim in which it raised the affirmative defense of release, among others, and attached a copy of a Settlement and Release Agreement (the "Release") entered into between NWS and Arnold, dated September 19, 2011. The Release notes in the caption that it is pursuant to a claim filed in the United States District Court for the Southern District of Indiana at New Albany and stated in part that Arnold agreed to pay NWS a sum of $30,000.00 and that "NWS hereby releases and discharges Arnold for all claims which it has or could have asserted, known and

_____

[2] In his counterclaim, Arnold stated that "NWS filed a claim . . . that Arnold had dishonestly misappropriated money from NWS in the amount of $1,178,054," that the allegations were "totally false and untrue," and that "NWS committed libel against Arnold by making false statements in writing to . . . CIC, which were defamatory per se . . . ." Appellant's Appendix at 43-44.

3

unknown, arising out of the employment of Arnold by NWS both as an employee and an independent contractor."[3] Id. at 49.

On April 26, 2012, CIC filed its motion for judgment on the pleadings stating that NWS destroyed CIC's subrogation rights under Paragraph 19 when it settled with Arnold and, as a result, extinguished its right of action under the Policy. CIC also filed a document entitled "Materials in Support of Motion for Judgment on Pleadings" noting that, pursuant to Ind. Trial Rule 56(C), it designated the following materials: the complaint and attached Policy, CIC's third-party complaint against Arnold, Arnold's counterclaim against NWS, and NWS's reply to Arnold's counterclaim with the attached Release. Id. at 65. On June 21, 2012, NWS filed its response in opposition to CIC's motion for judgment on the pleadings, and on August 8, 2012, CIC filed its reply to NWS's response in opposition to motion for judgment on the pleadings. Also, on September 10, 2012, Arnold filed his response to the motion for judgment on the pleadings filed by CIC supporting CIC's motion, specifically stating that "Arnold agrees with the argument submitted by [CIC] that NWS is barred from any right to recover under the insurance contract with [CIC] because of the NWS settlement and release of Arnold" and that "[t]he case of Hockelberg v. Farm Bureau Ins. Co., 407 N.E.2d 1160 (Ind. [Ct.] App. 1980)[,] is directly on point . . . ." Id. at 123.

On September 18, 2012, the court held a hearing on CIC's motion, the parties presented their arguments, and the court asked the parties to submit proposed findings of fact and conclusions of law. CIC and NWS each filed proposed findings, and on October

---

[3] The Release contains similar language in which Arnold released NWS for all claims arising out of the employment of Arnold by NWS. Appellant's Appendix at 49.

4

31, 2012, the court entered its Findings of Fact, Conclusions of Law, and Rule (the "Order") denying CIC's motion. CIC filed a motion for certification of interlocutory order to permit immediate appeal, and, on November 19, 2012, the trial court certified its Order for an interlocutory appeal. CIC filed its motion for interlocutory appeal in this court on December 15, 2012, which was granted on January 18, 2013.

ISSUE AND STANDARD OF REVIEW

The issue is whether the court erred in denying CIC's motion for judgment on the pleadings. We review *de novo* a trial court's ruling on a Rule 12(C) motion for judgment on the pleadings. Murray v. City of Lawrenceburg, 925 N.E.2d 728, 731 (Ind. 2010). We accept as true the well-pleaded material facts alleged in the complaint, and base our ruling solely on the pleadings. Id. (citing Noblesville Redevelopment Comm'n v. Noblesville Assocs. Ltd. P'ship, 674 N.E.2d 558, 562 (Ind. 1996)). A Rule 12(C) motion for judgment on the pleadings is to be granted "only where it is clear from the face of the complaint that under no circumstances could relief be granted." Id. (quoting Forte v. Connerwood Healthcare, Inc., 745 N.E.2d 796, 801 (Ind. 2001) (quoting Culver-Union Twp. Ambulance Serv. v. Steindler, 629 N.E.2d 1231, 1235 (Ind. 1994))).

When reviewing a Rule 12(C) motion, we may look only at the pleadings and any facts of which we may take judicial notice, with all well-pleaded material facts alleged in the complaint taken as admitted. Waldrip v. Waldrip, 976 N.E.2d 102, 110 (Ind. Ct. App. 2012). "The 'pleadings' consist of a complaint and an answer, a reply to any counterclaim, an answer to a cross-claim, a third-party complaint, and an answer to a third-party complaint." Id. (citing Fox Dev., Inc. v. England, 837 N.E.2d 161, 164 n.1

5

(Ind. Ct. App. 2005)).  "Pleadings" also consist of any written instruments attached to a pleading, pursuant to Ind. Trial Rule 9.2.  LBM Realty, LLC v. Mannia, 981 N.E.2d 569, 576 n.10 (Ind. Ct. App. 2012); see also Ind. Trial Rule 10(C) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").[4]

The provisions of an insurance contract are subject to the same rules of construction as are other contracts.  Cincinnati Ins. Co. v. Adkins, 935 N.E.2d 190, 192 (Ind. Ct. App. 2010).  Thus, the construction of CIC's Policy presents a pure question of law that we review *de novo*.  Id.  If a contract's terms are clear and unambiguous, courts must give those terms their clear and ordinary meaning.  Dunn v. Meridian Mut. Ins. Co., 836 N.E.2d 249, 252 (Ind. 2005).  Courts should interpret a contract so as to harmonize its provisions, rather than place them in conflict.  Id.  "We will make all attempts to construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless."  Rogers v. Lockard, 767 N.E.2d 982, 992 (Ind. Ct. App. 2002).  "A contract will be found to be ambiguous only if reasonable persons would differ as to the meaning of its terms."  Beam v. Wausau Ins. Co., 765 N.E.2d 524, 528

---

[4] We note that CIC in its motion for judgment on the pleadings recited the standard of review for summary judgment motions pursuant to Ind. Trial Rule 56(C).  Also, the court in its order noted both the standards of review under Ind. Trial Rules 12(C) and 56(C).  Ind. Trial Rule 12(C) states that "[i]f, on a motion for judgment on the pleadings, *matters outside the pleadings are presented* to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  (Emphasis added).  Indeed, this court has observed that if a trial court intends to treat a motion for judgment on the pleadings as a motion for summary judgment by considering materials outside of the pleadings, as permitted by Trial Rule 12(C), it must give the parties notice that it intends to do so and provide the parties with a reasonable opportunity to present all pertinent material to the court.  See Waldrip, 976 N.E.2d at 110.

Matters outside the pleadings include materials such as depositions, answers to interrogatories, admissions, and affidavits.  See Fox, 837 N.E.2d at 164.  After reviewing the record, it is clear that the court did not consider matters outside of the pleadings, and on review we similarly consider only the pleadings and written instruments attached pursuant to Ind. Trial Rule 9.2. Thus, our appropriate standard of review is under Ind. Trial Rule 12(C) and not Trial Rule 56.

(Ind. 2002), reh'g denied. "When a contract's terms are ambiguous or uncertain and its interpretation requires extrinsic evidence, its construction is a matter for the fact-finder." Johnson v. Johnson, 920 N.E.2d 253, 256 (Ind. 2010).

DISCUSSION

CIC argues that NWS admits that its claim against CIC is based upon the wrongful acts committed by Arnold and that NWS executed a release with Arnold, and "[i]t is crystal clear after looking at the 'pertinent parts' of the" Policy and the Release that NWS "has destroyed [CIC's] subrogation rights, and therefore has extinguished their right of action against [CIC] under Indiana law." Appellant's Brief at 8-9. CIC emphasizes that Paragraph 19 requires NWS to "do everything necessary to secure [its rights of recovery] and do nothing after loss to impair them." Id. at 9 (emphasis omitted). CIC discusses specific examples in Indiana case law including Hockelberg and Adkins, cited to above, as well as Allstate Ins. Co. v. Meek, 489 N.E.2d 530 (Ind. Ct. App. 1986), and maintains that such examples make "abundantly clear" that NWS's right to recover under the Policy was extinguished when it executed the Release with Arnold. Id. at 10.

NWS argues that the cases cited by CIC are "clearly distinguishable from the instant matter," noting specifically that Hockelberg is "factually distinguishable" because the claim here is one of "employee fraud and misconduct and not personal injury" and that the settlement in that case "encompassed all claims whereas the release of Arnold . . . did not address the claim against [CIC]." Appellee's Brief at 5-6. NWS cites to Capps v. Klebs, 178 Ind. App. 293, 382 N.E.2d 947 (1979), for the propositions that "subrogation was to be allowed only after the policyholder is fully compensated for his adjudged

7

losses" and that the right to subrogation "does not exist unless the whole debt has been paid." Id. at 6. NWS also argues that, under Capps, an "insurance company [is] not entitled to proceeds of the settlement unless the insurance policy clearly and unequivocally permitted such subrogation," and the contract language here is not clear, unequivocal, or certain.[5] Id. at 7.

In its reply brief, CIC notes that NWS "makes no attempt to distinguish or argue against" Adkins, presumably because it "has no available argument to make against the applicability of that holding." Appellant's Reply Brief at 9. CIC argues that the Adkins Court discussed "the same language that [NWS] has attempted to argue is not clear and unequivocal and finds that [such an] interpretation . . . is inconsistent with the plain language of the policy." Id. at 10.

In Hockelberg, plaintiff Hockelberg was involved in an automobile accident, sustaining personal injuries, and she sued the driver and the driver's employer, eventually

---

[5] We note that NWS filed an appellee's appendix containing two letters sent by NWS for the proposition that CIC was on notice of the litigation involving NWS and Arnold, that CIC did not intervene despite such notice, and that it was CIC's duty to intervene if it wanted to preserve its subrogation rights. See Appellee's Brief at 4-5 (citing Stewart v. Walker, 597 N.E.2d 368, 372 (Ind. Ct. App. 1992), reh'g denied, and Ind. Ins. Co. v. Noble, 265 N.E.2d 419, 433-434 (Ind. Ct. App. 1970)). However, the issue of existence of these letters was not presented to the trial court, and they are being submitted for the first time on appeal, which NWS may not do. Therefore, this issue is waived. See Yoost v. Zalcberg, 925 N.E.2d 763, 770 (Ind. Ct. App. 2010) (holding that issues not raised before trial court on summary judgment cannot be argued for first time on appeal and are waived), reh'g denied, trans. denied. NWS could have submitted affidavits attesting to the existence of such letters under Trial Rule 56, but it chose not to do so.

Further, we note that CIC in its reply brief makes several arguments that NWS's notice argument fails. First, CIC argues that the rules announced in Stewart and Noble "only apply to uninsured motorist claims." Appellant's Reply Brief at 4. Second, regarding the letters themselves, CIC notes that the first letter was sent to a company who investigated the insurance claim for CIC and not CIC itself and that it dealt with an investigation rather than to provide notice of a pending action. CIC also notes that the second letter is dated September 29, 2011, which is after the Release was executed. Third, CIC notes, as we similarly observe above, that the letters "were clearly known to [NWS] at the time of the Motion for the Judgment on the Pleadings, and they were not introduced at the trial level" and that, in any event, they are inadmissible hearsay because they were not authenticated by affidavit under Ind. Evidence Rule 803(6) or otherwise. Id. at 6.

8

settling the lawsuit for $15,000. 407 N.E.2d at 1161. As a part of the settlement, Hockelberg "entered into a release wherein [the defendants] were discharged from all liability arising out of the accident," and "the cause was dismissed with prejudice to Hockelberg." Id. Prior to the dismissal, Hockelberg filed a claim with her insurer, Farm Bureau, for $2,000 in medical expenses stemming from the accident, and Farm Bureau informed her that before it would tender payment she "would have to sign a medical subrogation receipt and trust agreement thereby assigning her right of recovery against" the defendants, basing its stance "on the subrogation clause contained in the policy." Id. Specifically, the subrogation clause stated the following:

> In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.

Id. Hockelberg refused to sign the subrogation agreement and, following dismissal against the defendants, she renewed her demand against Farm Bureau in which the trial court ultimately granted summary judgment in Farm Bureau's favor. Id.

On appeal, Hockelberg argued that summary judgment was improper because there was no evidence that the release prejudiced Farm Bureau's subrogation rights, and she suggested that the defendants "might waive the affirmative defense of release in a separate suit brought by Farm Bureau against them, thus preserving the right of subrogation." Id. The court disagreed, noting that "[w]hen the insurer is claiming a right through subrogation it stands in the shoes of the insured and takes no rights other than those which the insured had. Id. at 1162. The court discussed subrogation as follows:

"Literally, the word means the substitution of one person for another, and as applied in law, it means the substitution of some other person in the place of the creditor, so that the person for whom it is exercised will succeed to the rights of the creditor in relation to the debt. There has been some confusion in the decided cases by a failure to keep in mind the fundamental principle that the creditor for whom the substitution takes place must necessarily have had some right to which the substituted person can succeed. Equity will not do a useless thing, and unless there is thus some right to which the substituted person can succeed, the doctrine of subrogation will not be applied." First & Tri S. N. B. & T. Co. v. Mass. B. & I. Co. (1936), 102 Ind. App. 361, at 367, 200 N.E. 449, at 452.

Moreover, where the insured releases his right of action against the wrongdoer before settlement with the insurer, the release destroys by operation of law his right of action on the policy. Auto Owners', etc., Exchange v. Edwards (1922), 82 Ind. App. 558, 136 N.E. 577.

Id. The court affirmed the trial court, holding that Hockelberg foreclosed Farm Bureau's right to subrogation by granting the defendants a complete release, and that, as a matter of law, she could not recover under the policy. Id.

Next, in Allstate Ins. Co. v. Meek, this court reversed the trial court's denial of insurer Allstate's summary judgment motion against Meek, the insured. 489 N.E.2d at 531. Meek had been involved in an automobile accident and sought compensation against the other driver, Bruce. Id. Meek settled with Bruce and executed a release barring further action by her against Bruce, and Allstate denied Meek coverage under her policy because her release prejudiced Allstate's right of subrogation. Id. Meek filed a lawsuit against Allstate, and Allstate filed a motion for summary judgment based in part on grounds that the release, as a matter of law, prejudiced its contractual right of subrogation, therefore releasing Allstate from its contractual obligations. Id.

10

After the trial court denied summary judgment, an interlocutory appeal ensued in which this court noted the subrogation provision in the insurance policy as follows: "Upon payment under [the policy], Allstate shall be subrogated to the extent of such payment to all of the insured's rights of recovery therefore. The insured shall do whatever is necessary to secure such rights and do nothing before or after the loss to prejudice such rights." Id. at 532. We observed:

> The policy imposes upon Allstate a duty to pay for damage to Meek's automobile, regardless of whether the insured or a third party causes the damage. *However, if a third party causes the damage, the policy contract gives Allstate a right of subrogation after payment to the insured and also imposes a duty upon the insured to refrain from taking any action which prejudices that right.* Finally, the insured cannot maintain an action against the insurer if the insured fails to comply with his obligations under the contract.

Id. (emphasis added). Allstate argued, and we agreed, that the matter was governed by Hockelberg, and we reversed and remanded with instructions to enter judgment in Allstate's favor. Id. at 532-533.

In reversing, we noted Meek's argument that Allstate's right of subrogation had not been prejudiced by the release because she "did not receive full compensation for her loss." Id. at 532. Meek cited to Capps and Willard v. Auto. Underwriters Inc., 407 N.E.2d 1192 (Ind. Ct. App. 1980), for the proposition that "until the insured receives full compensation any rights of subrogation are not prejudiced by the release," and she argued that a factual dispute existed over whether the settlement she received from Bruce constituted payment in full for her loss, therefore precluding summary judgment. Id. In dismissing Meek's argument, we observed that "Capps and Willard hold an insurer's right of action *against its own insured* to recover payments the insurer has made under its

11

policy does not mature until and unless the insured's debt, *i.e.* loss, is paid in full" and that "[a] casual reading of these two cases would seem to contradict, if not overrule, Hockelberg . . . ." Id. at 532-533 (emphasis added). We then noted that "in fact, the cases are critically distinguishable" because "[i]n Capps and Willard, the insurer's contractual *right of subrogation continued* although it was held in abeyance until insured received full compensation" whereas "[i]n Hockelberg . . . the insurer's contractual *right of subrogation was destroyed*. Thus, the two lines of cases are not in conflict but rather are entirely consistent." Id. at 533 (emphases added) (footnote omitted). We also noted that "[i]n Capps the insured pursued the tortfeasor through judgment and, accordingly, a release or other conduct of the insured was not an issue," and "[i]n Willard the insurer had given notice to the alleged tortfeasor of its payment to its insured. Therefore, the insurer's right of subrogation was fully protected even though the insured subsequently released the tortfeasor." Id. at 533 n.2.

Indeed, as noted by CIC, the rule expressed in Hockelberg and Meek was recently reaffirmed in Cincinnati Ins. Co. v. Adkins. Adkins involved an automobile accident between Anita Adkins and Emily Strack in which Adkins held, in addition to primary insurance through Safeco, an umbrella policy with Cincinnati which provided excess underinsured motorist protection. 935 N.E.2d at 191. The policy contained the following provision: "The 'insured' must do nothing after loss to impair [any rights held by the insured to recover a payment]. At [Cincinnati's] request, the 'insured' will bring 'suit' or transfer those rights to [Cincinnati] and help [Cincinnati] enforce them." Id. at 191-192. Adkins and Strack settled for a sum of $100,000, and Adkins did not inform Cincinnati of

12

the settlement until after the release had been executed. Id. at 192. After Adkins sought coverage from Cincinnati, Cincinnati asked for a declaratory judgment regarding whether she breached the policy by settling with Strack without informing Cincinnati or seeking its consent. Id. The parties filed cross-motions for summary judgment, and the court granted summary judgment in favor of Adkins, finding that she did not breach the terms of her insurance policy when she settled with Strack without notice or consent of Cincinnati. Id. at 191-192.

On appeal, we began by observing that Adkins's release of Strack was a breach of the insurance contract, citing the following language:

> [A]n insured who destroys the insurer's contractual subrogation rights breaches the insurance contract and, as a result, extinguishes his right of action on the policy. *An insured destroys the insurer's contractual subrogation right by releasing the tortfeasor prior to settling with the insurer* because it is that very settlement which enables the insurer to protect its subrogation right by giving notice thereof to the tortfeasor.

Id. at 193 (quoting Tate v. Secura Ins., 587 N.E.2d 665, 670 (Ind. 1992) (quoting Meek, 489 N.E.2d at 533)) (emphasis added). We held specifically:

> The trial court interpreted the Cincinnati policy language that "[i]f the 'insured' has rights to recover all or part of *any payment 'we' have made* under this policy, those rights are transferred to 'us'," . . . to mean "there must be a payment made under the policy that the insured has a right to recover. Then, and only then, must the insured do nothing to impair subrogation rights."
>
> That interpretation is inconsistent with the plain language of the policy. The policy language is that "[t]he 'insured' must do nothing *after loss* to impair [Cincinnati's subrogation rights]." As "loss" must necessarily happen before an insurer makes a payment under its policy, *it is apparent from the policy language that Adkins' obligation to notify Cincinnati and obtain its consent before settling with the tortfeasor arose at the time of the accident*, not at some later date after Cincinnati made a payment.

13

Id. (internal citations and footnote omitted) (emphasis added).

## DECISION

The situation presented by the instant case is not unlike those in Hockelberg, Meek, and Adkins. Again, the relevant subrogation clause found in Paragraph 19 states: "You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them." Appellant's Appendix at 20. This language is substantially similar to that in the cases discussed above. Also, just as in those cases, here NWS settled with Arnold and, in so doing, executed the Release which released Arnold "for all claims which [NWS] has or could have asserted, known and unknown, arising out of the employment of Arnold by NWS both as an employee and an independent contractor." Id. at 49. This Release "after loss" destroyed CIC's right of subrogation and was a breach of contract on NWS's part, therefore discharging CIC from obligation under the Policy to provide coverage. Accordingly, we conclude that the court erred when it denied CIC's motion for judgment on the pleadings.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's denial of CIC's motion for judgment on the pleadings and remand with instructions to enter judgment for CIC.

Reversed and remanded.

RILEY, J., and BRADFORD, J., concur.

14