## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 12 2019, 9:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alan D. Naggatz
Law Office of Alan D. Naggatz
Valparaiso, Indiana

ATTORNEY FOR APPELLEE

Josef Musser
Spitzer Herriman Stephenson
Holderead Conner & Persinger, LLP
Marion, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Penny Denecho, Edward Denecho, and Darlene Johnson,

*Appellants-Defendants,*

v.

Indiana Farm Bureau Insurance Company,

*Appellee-Plaintiff*

September 12, 2019

Court of Appeals Case No. 18A-CT-2900

Appeal from the Madison Circuit Court

The Honorable G. George Pancol, Judge

Trial Court Cause No. 48C02-1404-CT-48

**Crone, Judge.**

# Case Summary

Penny Denecho and Edward Denecho ("the Denechos") appeal the trial court's entry of summary judgment in favor of Indiana Farm Bureau Insurance Company ("Farm Bureau"). The sole restated issue presented for our review is whether the Denechos breached the terms of their insurance policy when they settled with a tortfeasor without proper notice to or consent of Farm Bureau, thus destroying their right of action under the policy as a matter of law. Concluding that Farm Bureau is entitled to summary judgment, we affirm.

# Facts and Procedural History

On April 9, 2012, Penny Denecho was driving a vehicle owned by Darlene Johnson when she and Ryan Inglis were involved in an accident on State Road 9 in Madison County. At the time of the accident, Inglis had an automobile insurance policy with Allstate that had per person/per incident coverage limits of $50,000/$100,000. Johnson[1] had an automobile insurance policy with Farm Bureau ("the Farm Bureau Policy") which provided Penny, as the operator of Johnson's vehicle, with uninsured or underinsured motorist ("UIM") coverage with per person/per incident coverage limits of $100,000/$300,000.

On April 9, 2014, the Denechos filed an amended complaint against Inglis and Farm Bureau. The Denechos alleged that they suffered injuries, losses, and

---

[1] Darlene Johnson is not a party to this appeal. However, pursuant to Indiana Appellate Rule 17(A), a party of record in the trial court shall be a party on appeal, and therefore we have included Johnson in the case caption.

damages[2] as a direct and proximate result of the negligent, reckless, or careless maintenance by Inglis of his vehicle. The Denechos further alleged that because Inglis may have been underinsured at the time of the accident, Farm Bureau had contracted to provide UIM benefits to the Denechos pursuant to the Farm Bureau Policy.

[4] On July 28, 2016, the Denechos' attorney purportedly sent a letter to Farm Bureau stating:

> I received a tender of policy limits from Allstate on behalf of Defendant Inglis in the above matter. This is notice requesting consent-to-settle, to the extent necessary under the Plaintiff's policy. Also advise if your client will be tendering the policy limits seeking or waiving subrogation against the tortfeasor.
>
> Please respond with your position within 30 days. If you have questions or concerns please contact me.

Appellants' App. Vol. 2 at 89. Five days later, on August 2, 2016, the Denechos executed a settlement agreement with Inglis and signed a written release of "any and all claims" against Inglis in exchange for the payment by Allstate of policy limits of $50,000 of its coverage of Inglis. *Id*. at 86. The release further provided:

> I further understand that as I may or shall have incurred, directly or indirectly, in connection with or for damages arising out of the accident to each person or organization, release and discharge of

---

[2] Edward's claim was for loss of consortium.

> liability herein, and to any other person or organization, is expressly reserved to each of them, such liability not being waived, agreed upon, discharged nor settled by the release, *including but not limited to underinsured claim(s)*.

*Id.*[3] (emphasis added). Allstate issued a $50,000 check to the Denechos on August 9, 2016.

[5] Farm Bureau subsequently requested that the Denechos dismiss their UIM claim against it on the basis that they breached the terms of the Farm Bureau Policy by settling their claims with Inglis without proper notice to or consent of Farm Bureau, and therefore Farm Bureau was discharged from any obligation to provide UIM coverage. The Denechos did not respond to Farm Bureau's request. Thereafter, Farm Bureau filed a motion for summary judgment and designation of evidence requesting a determination, as a matter of law, that the Denechos had breached the Farm Bureau Policy and had lost their right of action against Farm Bureau. The Denechos filed a brief and designation of evidence in opposition to summary judgment.[4] Following a hearing, the trial court entered summary judgment in favor of Farm Bureau. This appeal ensued.

---

[3] The italicized language was handwritten on the typed release.

[4] Farm Bureau filed a summary judgment reply brief the day before the scheduled hearing. The Denechos' counsel made an oral motion to strike the reply brief due to the late filing and alleged hearsay contained in the attachments to the brief; however, it does not appear that the trial court ruled on that oral motion. Nevertheless, we need not address the Denechos' argument on appeal that the trial court erred in failing to strike the reply brief or attachments, as neither was necessary for or relied upon by this Court in our de novo review.

# Discussion and Decision

[6] When reviewing the grant of summary judgment, our standard of review is the same as that of the trial court. *FLM, LLC v. Cincinnati Ins. Co.*, 973 N.E.2d 1167, 1173 (Ind. Ct. App. 2012) *trans. denied* (2013). We stand in the shoes of the trial court and apply a de novo standard of review. *Id*. Summary judgment is appropriate only where the designated evidence shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). A trial court's grant of summary judgment is clothed with a presumption of validity, and the party who lost in the trial court has the burden of demonstrating that the grant was erroneous. *Henderson v. Reid Hosp. & Healthcare Servs.*, 17 N.E.3d 311, 315 (Ind. Ct. App. 2014), *trans. denied* (2015). We will affirm upon any theory or basis supported by the designated materials. *Id*.

[7] The provisions of an insurance contract are subject to the same rules of construction as are other contracts. *Holiday Hosp. Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574, 577 (Ind. 2013). Clear and unambiguous policy language is given its ordinary meaning. *Id*. The construction of an insurance contract generally presents purely a question of law, and therefore it is particularly well suited for de novo appellate review. *Id*.

[8] The relevant language of the Farm Bureau Policy regarding its subrogation rights and the insured's obligation to protect those rights provides:

If we make any payment, we are entitled to recover what we paid from other parties.

Any person or for whom we make payment must assign to us their rights of recovery against any other party. This person must do everything necessary to secure these rights and *must do nothing after a loss that would jeopardize them*.

Appellants' App. Vol. 2 at 39 (emphasis added). In support of summary judgment, Farm Bureau maintains that the Denechos did in fact do something after the accident to jeopardize Farm Bureau's rights of recovery against Inglis; specifically, they settled with and executed a release of all claims against Inglis without proper notice to or consent of Farm Bureau. Therefore, Farm Bureau contends, the Denechos forfeited UIM benefits as a matter of law. We agree.

[9] Indiana law is clear that when an insured settles a claim with the tortfeasor without the insurer's consent, the insured breaches the insurance policy's provisions requiring protection of the insurer's subrogation rights and forfeits any claim for underinsured motorist benefits under the policy. *Cincinnati Ins. Co. v. Adkins*, 935 N.E.2d 190, 193 (Ind. Ct. App. 2010) (citing *Tate v. Secura Ins.*, 587 N.E.2d 665, 670 (Ind. 1992)). Stated another way,

> [A]n insured who destroys the insurer's contractual subrogation rights breaches the insurance contract and, as a result, extinguishes his right of action on the policy. An insured destroys the insurer's contractual subrogation right by releasing the tortfeasor prior to settling with the insurer because it is that very settlement which enables the insurer to protect its subrogation right by giving notice thereof to the tortfeasor.

*Tate*, 587 N.E.2d at 670 (quoting *Allstate Ins. Co. v. Meek*, 489 N.E.2d 530, 533 (Ind. Ct. App. 1986)).

[10] Moreover, Indiana Code Section 27-7-5-6 provides in relevant part:

(a) The policy or endorsement affording the [UIM] coverage specified in this chapter may also provide that payment to any person of sums as damages under such coverage shall operate to subrogate the insurer to any cause of action in tort which such person may have against any other person or organization legally responsible for the bodily injury or death, or property damage, because of which such payment is made. The insurer shall be subrogated, to the extent of such payment, to the proceeds of any settlement or judgment that may later result from the exercise of any rights of recovery of such person against any person or organization legally responsible for said bodily injury or death, or property damage, for which payment is made by the insurer. Such insurer may enforce such rights in its own name or in the name of the person to whom payment has been made, as in their interest may appear, by proper action in any court of competent jurisdiction.

(b) An insurer providing underinsured motorist coverage does not have a right of subrogation against an underinsured motorist if:

(1) the insurer has been provided with a written notice that:

(A) informs the insurer of the existence of a bona fide offer of agreement or settlement between its insured and the underinsured motorist; and

(B) includes a certification of the liability coverage limits of the underinsured motorist; and

(2) the insurer fails to advance payment to the insured in an

amount equal to the amount provided for in the offer of agreement or settlement within thirty (30) days after the insurer receives the notice described in subdivision (1).

However, an insurer that, under the circumstances described in subdivision (1), advances payment to the insured in an amount equal to the amount provided for in the offer of agreement or settlement, has full rights of subrogation as provided in its policy or endorsement affording the underinsured motorist coverage.

Accordingly, our legislature has provided that in the case of a settlement offer from an underinsured motorist, an insured protects her insurer's subrogation rights by providing written notice that informs the insurer of the offer and includes a certification of the coverage limits of the underinsured motorist. The insurer then has thirty days after the receipt of that notice to advance payment to the insured in an amount equal to the settlement offer.[5] If the insurer then fails to advance such payment within the thirty-day period, the insurer forfeits its right of subrogation against the underinsured motorist.

[11]   The undisputed facts demonstrate that the Denechos executed their settlement and release of all claims against Inglis without Farm Bureau's consent a mere five days after they sent a letter notifying Farm Bureau about the offer.[6] In

---

[5] Pursuant to the Farm Bureau Policy language, the Denechos' obligation to do nothing to jeopardize Farm Bureau's subrogation rights, such as notifying Farm Bureau and obtaining its consent before settling with Inglis, arose at the time of the accident. *See Adkins*, 935 N.E.2d at 193 (noting that the insured's contractual obligation to do nothing to impair the insurer's subrogation rights arises at the time of the "loss" or accident and not at some later date after the insurer has made payment).

[6] While not necessary to our resolution in this case, the purported notice sent to Farm Bureau by counsel for the Denechos was deficient as it did not include a certification of liability coverage limits as required by

doing so, the Denechos unquestionably denied Farm Bureau the opportunity to advance payment in an amount equal to the amount provided for in the offer in order to maintain its full rights of subrogation. *See* Ind. Code § 27-7-5-6(b)(2). As in *Adkins*, this was a clear breach of the insurance policy's provisions requiring protection of the insurer's subrogation rights. *Adkins*, 935 N.E.2d at 193.

[12] The Denechos attempt to distinguish this case from *Adkins* by asserting that, unlike the "general release" executed in *Adkins*, the language of the release here did not jeopardize Farm Bureau's subrogation rights because the release specifically provided that the Denechos "retained the right to pursue [their] UIM claim against Farm Bureau." Appellants' Reply Br. at 6. In making this argument, the Denechos conflate two distinct things. Namely, they conflate their rights as to Farm Bureau with Farm Bureau's rights as to Inglis. The only right of action the language of the current release attempted to protect was the Denechos' right of action against Farm Bureau. The Denechos have unequivocally released any and all rights of action against Inglis, which would include Farm Bureau's subrogation rights.[7]

---

Indiana Code Section 27-7-5-6(b)(1)(B). In fact, the letter did not even mention the amount of the settlement offer.

[7] The Denechos argue that Farm Bureau has not shown that its subrogation rights have actually been impaired, and they suggest that "Allstate could very likely" honor a subrogation claim if Farm Bureau simply makes such a claim. Appellants' Br. at 28. This is a curious position considering that Allstate filed, on Inglis's behalf, a motion to enforce settlement agreement and for dismissal with prejudice, which the trial court granted. Appellants' App. at 6. As Inglis is no longer a party to the litigation, we fail to see how Farm Bureau could attempt to enforce these alleged "reserved" subrogation rights. *Id.*

[13] Again, it is well settled that "where the insured releases his right of action against the wrongdoer before settlement with the insurer, the release destroys by operation of law his right of action on the policy." *Consol. Ins. Co. v. Nat'l Water Servs., LLC*, 994 N.E.2d 1192, 1199 (Ind. Ct. App. 2013) (citing *Auto Owners', etc., Exchange v. Edwards*, 82 Ind. App. 558, 136 N.E. 577 (1922)); *Hockelberg v. Farm Bureau Ins. Co.*, 407 N.E.2d 1160, 1161 (Ind. Ct. App. 1980). As it is undisputed that the Denechos released their claims against Inglis before settlement with Farm Bureau, the release destroyed the Denechos' right of action against Farm Bureau by operation of law. Having foreclosed Farm Bureau's subrogation rights, the Denechos breached their insurance contract and are now precluded as a matter of law from maintaining an action against Farm Bureau for UIM benefits. The trial court's entry of summary judgment in favor of Farm Bureau is affirmed.

[14] Affirmed.

Vaidik, C.J., and Altice, J., concur.