ATTORNEY FOR APPELLANTS
Douglas R. Denmure
Aurora, Indiana

ATTORNEY FOR APPELLEE
CITY OF LAWRENCEBURG
Joseph W. Votaw, III
Lawrenceburg, Indiana

ATTORNEY FOR APPELLEE
LAWRENCEBURG CONSERVANCY DISTRICT
Richard A. Butler
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE
INDIANA GAMING, L.P.
Peter J. Rusthoven
Jan M. Carroll
E. Timothy DeLaney
Indianapolis, Indiana

FILED

Apr 20 2010, 12:22 pm

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

15S04-0907-CV-310

GLORIA A. MURRAY, ET AL.,

*Appellants (Plaintiffs below),*

v.

CITY OF LAWRENCEBURG, ET AL.,

*Appellees (Defendants below).*

Interlocutory Appeal from the Dearborn Circuit Court, No. 15C01-0511-PL-75
The Honorable James D. Humphrey, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 15A04-0803-CV-122

**April 20, 2010**

**Boehm, Justice.**

We hold that inverse condemnation is the sole remedy for a governmental act that purports to exercise all rights of ownership over a parcel of land. We also hold that the six year

statute of limitations for trespass applies to such a claim. As a result, the statute of limitations bars the plaintiffs' suit in 2005 seeking to claim ownership of land leased in 1997 by the City of Lawrenceburg to a private party.

## Facts and Procedural History

Because this is an appeal from the denial of a motion for judgment on the pleadings, we accept the allegations of the complaint as true. Plaintiffs claim ownership of a 0.768 acre parcel of land located within a 32.074 acre parcel in Lawrenceburg. The larger parcel serves as the Ohio River docking site of the Argosy Casino operated by Indiana Gaming Company, L.P. Plaintiffs claim to be successors in interest to the tenants in common who were grantees in an 1886 deed to the disputed parcel. Plaintiffs allege that from 1941 to 1995, the parcel had been labeled on the Lawrenceburg Flood Control District Land Acquisition Map as having an "unknown" owner, and during that time no one else had claimed or established ownership over the parcel. There is no allegation that any plaintiff asserted any rights in the property during that period.

The complaint alleges the following other relevant facts. On December 28, 1995, the Lawrenceburg Conservancy District leased the 32.074 acre parcel to the City of Lawrenceburg. The lease warranted title except for the disputed parcel. On February 1, 1996, the Central Railroad Company of Indiana gave the City a quitclaim deed for those 0.768 acres accompanied by an affidavit stating that it obtained title to the parcel through an 1865 deed from the White Water Valley Canal Company. The City subleased the entire 32.074 acres, including the disputed parcel, to Indiana Gaming on August 20, 1996, and Indiana Gaming began operations at the site in December 1997.

On November 21, 2005, more than six but less than ten years after the lease to Indiana Gaming, plaintiffs filed this suit against the City, the Conservancy District, and Indiana Gaming. The suit sought to quiet title to the disputed parcel, eject the defendants, and set aside the quitclaim deed and the leases. It also requested compensation for lost rent under negligence and unjust enrichment theories. A jury trial was demanded.

Defendants moved for judgment on the pleadings pursuant to Indiana Trial Rule 12(C), arguing that even if plaintiffs owned the parcel, their only cause of action was inverse condemnation which was barred by the six year statute of limitations for injury to real property. The trial court denied the motion but certified its order for interlocutory appeal. The Court of Appeals did not accept that appeal, but later accepted this second interlocutory appeal by plaintiffs from the trial court's subsequent denial of their demand for a jury trial.

Defendants cross-appealed, again seeking appellate review of the trial court's denial of their motion for judgment on the pleadings based on the statute of limitations. The Court of Appeals allowed defendants' cross-appeal to proceed, but rejected the merits of defendants' claim to judgment on the pleadings, ruling that plaintiffs "were not required to bring a claim for inverse condemnation, because inverse condemnation is not an exclusive remedy and because ownership of the Disputed Property has not yet been determined." Murray v. City of Lawrenceburg, 903 N.E.2d 93, 107 (Ind. Ct. App. 2009). The Court of Appeals also held that plaintiffs were entitled to a jury trial. Id. at 107–08. We granted transfer.

## I. The Propriety of Defendants' Cross-Appeal

The right to a jury trial is the only issue presented by the order of the trial court that produced this appeal. A threshold issue is whether the ruling on the motion for judgment on the pleadings is now before us.

Pursuant to Indiana Appellate Rule 14(B), if a trial court certifies an order for interlocutory appeal, the Court of Appeals has discretion to accept or reject the appeal, and the Court of Appeals refused to entertain the limitations issue when it was first certified. Murray v. City of Lawrenceburg, 903 N.E.2d 93, 97–98 (Ind. Ct. App. 2009). In this second attempt to present the statute of limitations issue in an interlocutory appeal, the Court of Appeals acknowledged that in a discretionary interlocutory appeal it normally considers only issues raised by the trial court's order that is the subject of the appeal. Id. at 98–100. The Court of Appeals noted, however, that the issue presented by defendants' cross-appeal had previously been certified by the trial court for interlocutory appeal. Id. at 99 (citing Harbour v. Arelco, Inc., 678 N.E.2d 381, 386 (Ind. 1997)). Moreover, the Court of Appeals found precedent for reconsideration of a motion to accept an interlocutory appeal, and held that it may reconsider any

3

ruling while an appeal is pending. Id. at 99 (citing Bridgestone Americas Holding, Inc. v. Mayberry, 854 N.E.2d 355, 359–60 (Ind. Ct. App. 2006), trans. granted, summarily aff'd in relevant part by 878 N.E.2d 189, 191 n.2 (Ind. 2007); Miller v. Hague Ins. Agency, Inc., 871 N.E.2d 406, 407 (Ind. Ct. App. 2007), reh'g denied). Finally, because defendants' motion may be dispositive of the case and moot the jury issue, the Court of Appeals exercised its discretion to entertain the issue raised by defendants. Id. at 99–100.

## II. Defendants' Motion for Judgment on the Pleadings

We review de novo a trial court's ruling on a Rule 12(C) motion for judgment on the pleadings. We accept as true the well-pleaded material facts alleged in the complaint, and base our ruling solely on the pleadings. Noblesville Redevelopment Comm'n v. Noblesville Assocs. Ltd. P'ship, 674 N.E.2d 558, 562 (Ind. 1996). A Rule 12(C) motion for judgment on the pleadings is to be granted "only where it is clear from the face of the complaint that under no circumstances could relief be granted." Forte v. Connerwood Healthcare, Inc., 745 N.E.2d 796, 801 (Ind. 2001) (quoting Culver-Union Twp. Ambulance Serv. v. Steindler, 629 N.E.2d 1231, 1235 (Ind. 1994)).

Defendants' claim to judgment on the pleadings turns on two issues: whether inverse condemnation is the only remedy available to plaintiffs, and, if so, what statute of limitations applies to a claim for inverse condemnation.

### A. *Inverse Condemnation*

The state has inherent authority to take private property for public use. Kelo v. City of New London, 545 U.S. 469, 477 (2005). The Indiana Constitution and the Fifth Amendment require just compensation if this authority is exercised. Schnull v. Indianapolis Union Ry. Co., 190 Ind. 572, 575, 131 N.E. 51, 52 (1921). Indiana Code Chapter 32-24-1 (2004) outlines the process by which the state is to initiate eminent domain proceedings. If the government takes property but fails to initiate proceedings, Section 32-24-1-16 explicitly allows an owner of property acquired for public use to bring a suit for inverse condemnation to recover money damages:

4

> A person having an interest in property that has been or may be acquired for a public use without the procedures of this article or any prior law followed is entitled to have the person's damages assessed under this article substantially in the manner provided in this article.

An action for inverse condemnation requires: "(1) a taking or damaging; (2) of private property; (3) for public use; (4) without just compensation being paid; and (5) by a governmental entity that has not instituted formal proceedings." 29A C.J.S. Eminent Domain § 560 (2007).

Plaintiffs argue as a threshold contention that inverse condemnation is inappropriate because the title to the parcel is clouded. They claim that a quiet title action is therefore the appropriate means to establish the rightful owner. We disagree. Ownership of an interest in the property is an element of a claim for inverse condemnation. If plaintiffs did not own the parcel, they had no claim at all. If they did own it, then the remedy was inverse condemnation.

The complaint alleges, correctly, that both the Conservancy District and the City are governmental entities. It also alleges that in 1996 a quitclaim deed was recorded purporting to convey title to the City, and since December of 1997 the parcel has been occupied by the City's lessee. This is an allegation that the government exercised ownership rights over the disputed parcel and deprived the plaintiffs of all use of it. As such, it was a proper subject for an inverse condemnation action at least by the end of 1997. The issue then becomes whether inverse condemnation is plaintiffs' exclusive remedy, or whether the complaint alleges some other viable theory.

The complaint seeks damages for the allegedly unlawful occupation of this parcel, and also seeks injunctive relief to, in effect, unwind the transactions in 1996 and 1997 that resulted in the lease to Indiana Gaming. In Dible v. City of Lafayette, 713 N.E.2d 269 (Ind. 1999), landowners sought declaratory and injunctive relief against the city regarding sewage and drainage structures built on their property. We found that "[e]quitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought against the government entity subsequent to the taking." Id. at 273. In Indiana Department of Transportation v. Southern Bells, Inc., 723 N.E.2d 432 (Ind. Ct. App. 1999), business owners sought to enjoin the construction of a median that would prevent traffic from reaching access roads leading to their businesses. The court concluded that

5

"[a]lthough injunctive relief may be necessary to remedy interference with landowner rights for a private purpose, where an alleged taking occurs for what is clearly a public purpose, equitable relief is generally unavailable as a matter of law where an action for compensation can be brought subsequent to the taking." Id. at 434 (citing Dible, 713 N.E.2d at 273). These decisions make clear that injunctive relief is not available to prevent a taking for a public purpose. They proceed from the premise that inverse condemnation provides a remedy at law that adequately compensates for a taking and precludes equitable relief. Carl W. Grow, Note, Inverse Condemnation and the Right of Access of Abutting Property Owners, 9 Ind. L. Rev. 859, 860 & n.6 (1976). Although we find little direct authority on this point, we think the same reasoning applies to attempts to reverse a completed taking. Eminent domain proceedings include provisions designed to compensate the landowner but also to permit the public need to be satisfied relatively quickly and at no more than a fair price. Id. at 861 & n.9 (citing Roger Arnebergh, Recent Developments in the Law of Inverse Condemnation, in 1974 Proceedings of the Institute on Planning, Zoning, and Eminent Domain 319, 322 (1974)). To allow alternative remedies would circumvent these provisions.

Plaintiffs cite Calumet National Bank v. AT&T, 682 N.E.2d 785, 791 (Ind. 1997), which allowed a trespass action against a private utility that had constructed fiber optic cable lines using an abandoned railroad right-of-way over the bank's land, for the proposition that "inverse condemnation is not an exclusive remedy." The issue in that case was whether a taking had occurred. The same was true of Indiana & Michigan Electric Co. v. Whitley County Rural Electric Membership Corp., 160 Ind. App. 446, 312 N.E.2d 503 (1974), which Calumet National Bank cited to support the quoted language. Moreover, both Calumet National Bank and Indiana & Michigan Electric Co. were disputes between private parties. One involved a utility easement and the other turned on whether eminent domain was available for one utility to condemn a yet undeveloped franchise of another utility. Calumet National Bank also cited an article surveying the availability of pre-taking trespass claims in addition to inverse condemnation for the value of the property taken in various jurisdictions. George H. Genzel, Annotation, Award of, or Pending Proceedings for, Compensation for Property Condemned, as Precluding Action for Damages Arising from Prior Trespasses Upon It, 33 A.L.R.3d 1132 (1970). Neither Calumet National Bank nor the authorities it cited addressed an attempt to undo a governmental act after the fact, or the availability of a damage remedy for a governmental taking of ownership of land freed

6

from the procedures of eminent domain. Moreover, as will be seen in Part B, even if a trespass claim were allowed, it would not help plaintiffs here because the same limitation statute applies to both inverse condemnation and to trespass on land. We conclude that inverse condemnation is the only remedy for government's exercising complete dominance and purported ownership of a piece of land.

Plaintiffs also argue that inverse condemnation is inapplicable here because the taking was not for a public use. Defendants respond that providing public routes of access to a private business is a public use. Plaintiffs are correct that, if there were no public use, neither eminent domain nor inverse condemnation would apply. But we readily find a public use here. Whether a particular use is a public use is a question for the courts to determine. 11A Ind. L. Enc. Eminent Domain § 10, at 254 (2007). Specifically, in Indiana, the taking of private land to develop public access to private casinos has been held to be a public use. E.g., City of Hammond v. Marina Entm't Complex, Inc., 733 N.E.2d 958, 962 (Ind. Ct. App. 2000). Other jurisdictions have also reached similar conclusions. See, e.g., Detroit v. Detroit Plaza Ltd. P'ship, 730 N.W.2d 523, 527 (Mich. Ct. App. 2006); City of Atlantic City v. Cynwyd Inv., 689 A.2d 712, 713–14 (N.J. 1997).

B. *The Statute of Limitations for Inverse Condemnation*

Defendants argue that this case is barred by the six year limitation period for "Actions for injuries to property other than personal property." I.C. § 34-11-2-7(3). Plaintiffs contend the residual ten-year limitation period applies. I.C. § 34-11-1-2(a).

No limitation period applies to an eminent domain proceeding by the state. To the extent plaintiffs have a claim, it is an inverse condemnation claim by the alleged owners. Acts constituting unlawful occupation of land by a public agency would be a trespass if committed by a private entity. In both cases, a party without an interest in the property physically disturbs and injures the property. A trespass action has long been held to be governed by the six year limitations period. E.g., Pickett v. Toledo, St. Louis & Kansas City R.R. Co., 131 Ind. 562, 31 N.E. 200 (1892) (applying the predecessor to I.C. § 34-11-2-7). In the most recent case on point, Scates v. State, the State offered the landowner compensation for land taken to build a highway, but the parties did not agree on valuation. 178 Ind. App. 624, 624–25, 383 N.E.2d 491, 492

7

(1978). When the landowner sued for compensation seventeen years after the action accrued, the Court of Appeals applied the residual ten-year limitation period. Id. at 625, 383 N.E.2d at 492–493. The Court noted, however, that "[i]f the State did not formally institute eminent domain proceedings," the State's presence on the land would be "of the nature of a trespass or inverse condemnation," and therefore a six year limitation would have applied. Id. at 625 n.2, 383 N.E.2d at 492 n.2 (citation omitted). Accordingly, we agree with the Court of Appeals that the six year limitation for trespass applies to inverse condemnation actions. See Murray v. City of Lawrenceburg, 903 N.E.2d 93, 101 (Ind. Ct. App. 2009) (citing Scates, 178 Ind. App. at 625 n.2, 383 N.E.2d at 492 n.2).

Plaintiffs' action accrued when they could have brought a claim for inverse condemnation. 18 Ind. L. Enc. Limitation of Actions § 30, at 622–24 (2003). Giving plaintiffs the benefit of the doubt, the last possible date the action could have accrued was December 1997, when Indiana Gaming began operations at the site.[1] Plaintiffs did not file this suit until November 21, 2005, almost eight years after the action accrued. Accordingly, plaintiffs' claim is barred by I.C. § 34-11-2-7.

**Conclusion**

The trial court's order denying defendants' motion for judgment on the pleadings is reversed. The case is remanded with instructions to enter judgment for defendants.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ., concur.

---

[1] Plaintiffs argue that a "discovery rule" should apply and therefore the cause of action did not accrue until December of 2003. "Under Indiana's discovery rule, a cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." Doe v. United Methodist Church, 673 N.E.2d 839, 842 (Ind. Ct. App. 1996), trans. denied, (citing Wehling v. Citizens Nat'l Bank, 586 N.E.2d 840, 843 (Ind. 1992)). Even if the discovery rule applied, plaintiffs in exercising ordinary diligence would have discovered the injury when the casino began its operations at the docking site in December of 1997.