**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 17 2014, 9:00 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID A. ANDERSON**
Anderson & Associates, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**MARK D. GERTH**
**JAMES W. ROEHRDANZ**
Kightlinger & Gray, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| BARBARA WIGGLES, | ) |
| | ) |
| Appellant/Plaintiff, | ) |
| | ) |
| vs. | ) No. 49A02-1306-CT-511 |
| | ) |
| SANDLIAN MANAGEMENT CORPORATION | ) |
| d/b/a U-STOR SELF-STORAGE, | ) |
| | ) |
| Appellee/Defendant. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Heather A. Welch, Judge
Cause No. 49D12-1211-CT-42693

**April 17, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

Barbara Wiggles signed a rental agreement with Sandlian Management Corporation d/b/a U-Stor Self Storage ("U-Stor") to rent two 5' x 10' storage units. In the agreement, Wiggles agreed to hold U-Stor harmless from any claim or lawsuit based on the negligence of U-Stor or any of its employees, agents, or representatives. After U-Stor filed a motion for judgment on the pleadings, Wiggles filed an affidavit as an exhibit to her response stating that she never intended to release U-Stor from its own negligence. The trial court struck her affidavit without a hearing on the motion to strike and granted U-Stor's motion for judgment on the pleadings after a hearing was held. Wiggles appeals the trial court's decision to grant U-Stor's motion to strike her affidavit and its decision to grant U-Stor's motion for judgment on the pleadings. Finding that Wiggles was not improperly denied a hearing on her motion to strike, her affidavit contained inadmissible evidence, and the exculpatory clause in U-Stor's rental agreement was valid and enforceable, we affirm.

**Facts and Procedural History**

In May 2011, Wiggles rented two storage units from U-Stor located at 5445 East Thompson Road in Indianapolis. Her rental agreements, which were identical for each unit, provided for a month-to-month rental of two 5' x 10' storage units. Appellant's App. p. 12-13, 15-16. In the rental agreements, she agreed to pay rent on the first day of each month.

Paragraph 20 of each rental agreement contained the following "Indemnity and Hold Harmless" clause:

> Occupant agrees to indemnify and hold Owner harmless from any and all costs, disbursements, expenses, demands, claims, actions, or cause of action

2

arising directly or indirectly from this Agreement or any renewal or extension thereof. Occupant further agrees to indemnify, defend and hold harmless Owner and the owner of the leased premises from any and all claims, damages, liabilities, judgments, causes of action, suits, expenses (including, without limitation reasonable attorney fees) and/or injuries asserted against or suffered by Owner or the owner of the leased premises arising out of, directly or indirectly, Occupant's default in the performance of any of its obligations under this Agreement or the breach of any covenants or agreements set forth in this Agreement including, without limitation, a breach of the provisions of paragraph 3 hereof. *Occupant further agrees to indemnify and hold Owner and Owner of the storage facility harmless from any claim or lawsuit based on or arising from any negligent act and/or omission by Owner and/or Owner of the facility or any of their employees, agents or representatives.*

*Id.* at 13, 16 (emphasis added).

In early July, Wiggles, who was seventy-nine years old at the time, went to U-Stor's facility on Thompson Road to pay her monthly bill. In order to pay her bill, she had to place her payment in a drop slot. *Id.* at 3. To access the drop slot, Wiggles had to step up onto the sidewalk. Once on the sidewalk, she had to approach and face the screen door that was blocking the drop slot. The door opened outward requiring Wiggles to step back and down off the curb to open the door and access the drop box.

While holding her payment in her right hand, she opened the screen door with her left hand. As she opened the door, she stepped back so she could get around the door and access the drop slot. There were no hand rails for her to hold while she stepped back.

When she stepped back to get around the screen door, she stepped off the sidewalk curb, lost her balance, and fell. *Id.* at 2. She fractured her hip and was unable to get up. An ambulance took her to St. Francis Hospital. As a result of the fall, Wiggles required surgery on her left hip, and two screws were placed inside her hip. *Id.*

3

Wiggles filed suit against U-Stor, alleging that she was injured because U-Stor did not provide a handrail, graded walkway, or any warnings about the curb. U-Stor filed an answer in which it denied that it was negligent and further alleged that Wiggles could not recover because the rental agreements included an "Indemnity and Hold Harmless" clause. It also filed a counterclaim seeking attorney's fees.

After Wiggles filed an answer to U-Stor's counterclaim, U-Stor filed a motion for judgment on the pleadings. Wiggles filed a response to U-Stor's motion for judgment on the pleadings and attached an affidavit as an exhibit to her response. In the affidavit, she claimed that she thought the indemnity-and-hold-harmless clause pertained to only the use of the storage unit and that "[i]t is not my understanding or intent now and never was my understanding or intent to release [U-Stor] from its own negligence in causing me harm." *Id.* at 43. U-Stor filed its reply to the motion for judgment on the pleadings and filed a motion to strike Wiggles's affidavit because her statements about her understanding of the rental agreement were extrinsic evidence of the intent of the parties and therefore not admissible.

A hearing was held in April 2013 on the motion for judgment on the pleadings. At the hearing, Wiggles argued that paragraph 20 of the rental agreement was an indemnity clause rather than an exculpatory clause because it did not contain language releasing U-Stor from any damage U-Stor would cause her. Tr. p. 8. Wiggles also argued that the provision releasing U-Stor's negligence was vague because it was not limited in scope or time. *Id.* at 10. Instead, she argued that the court should limit the scope of the clause to include only the rental space, not the area where the bill-pay slot was located. Wiggles

also argued that the last sentence of the clause in paragraph 20 did not contain limiting language and was therefore overly broad. *Id.* at 11-12. The motion to strike was not addressed at the hearing.

After the hearing, the trial court granted U-Stor's motion to strike Wiggles's affidavit. Appellant's App. p. 80. It determined that the contract was unambiguous, and thus, Wiggles's affidavit was barred because it contained extrinsic evidence about the meaning of the contract. *Id.* The same day, the trial court also granted U-Stor's motion for judgment on the pleadings, concluding that Wiggles knowingly and willingly signed the rental agreement, which contained an exculpatory clause that specifically referred to U-Stor's negligence. *Id.* at 87.

Wiggles now appeals.

## Discussion and Decision

Wiggles makes two arguments on appeal. First, she argues that the trial court erred in granting U-Stor's motion to strike her affidavit without a hearing. Second, she argues that the trial court erred in granting U-Stor's motion for judgment on the pleadings.

## I. Motion to Strike Wiggles's Affidavit

We review the trial court's decisions on the admissibility of evidence, which include motions to strike an affidavit, under the abuse-of-discretion standard. *Kroger Co. v. Plonski*, 930 N.E.2d 1, 5 (Ind. 2010). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, or the reasonable, probable, and actual deductions to be drawn therefrom. *Kelly v. GEPA Hotel Owner Indianapolis LLC*, 993 N.E.2d 216, 219-20 (Ind. Ct. App. 2013).

*A. The Lack of a Hearing on the Motion to Strike*

Wiggles argues that the trial court erred because it should have held a hearing before granting U-Stor's motion to strike her affidavit. However, Wiggles never raised this argument in the trial court. It is well settled that "'a party may not present an argument or issue to an appellate court unless the party raised that argument or issue to the trial court.'" *Heaphy v. Ogle*, 896 N.E.2d 551, 555 (Ind. Ct. App. 2008) (quoting *GKC Ind. Theaters, Inc. v. Elk Retail Investors, LLC.*, 764 N.E.2d 647, 651 (Ind. Ct. App. 2002)). If that issue is not raised before the trial court, it is waived. *Van Winkle v. Nash*, 761 N.E.2d 856, 859 (Ind. Ct. App. 2002). At the hearing on the motion for judgment on the pleadings, Wiggles did not address U-Stor's motion to strike her affidavit. *See* Tr. p. 1-12. The trial court specifically asked Wiggles's counsel if he wanted to add anything in support of his argument, but he did not mention the motion to strike. *Id.* at 11. After the court ruled, Wiggles did not object to the trial court's decision to strike her affidavit without a hearing until this appeal. Appellant's App. p. 2. *See Christmas v. Kindred Nursing Ctrs. Ltd. P'ship*, 952 N.E.2d 872, 877 (Ind. Ct. App. 2011) (holding that a party waived its right to a hearing on a motion for summary judgment when it failed to object after the trial court canceled the scheduled hearing and ruled on the summary-judgment motion).

Waiver notwithstanding, the trial court did not err in not holding a hearing. Wiggles points to no rule or case law requiring a hearing before granting a motion to strike. Instead, she cites one case that states "the elements of due process required in civil proceedings are not definable with precision, but the opportunity to be heard is fundamental." *Baughman v. State*, 777 N.E.2d 1175, 1177 (Ind. Ct. App. 2002). However, *Baughman* is

distinguishable. In that case, the trial court ordered Baughman's attorney to pay $250 for abusing the subpoena power of the court without a hearing. In doing so, the trial court did not give Baughman or her lawyer an opportunity to respond to the request for sanctions even though the Indiana Trial Rules "contemplate a hearing in order to determine the reasonableness of the sanction." *Id*. (discussing Ind. Trial Rule 37(B)).

A reading of the Indiana Trial Rules suggests there is no requirement of a hearing before a motion to strike is ruled upon. *See, e.g.*, Ind. Trial Rule 56(C) ("The court may conduct a hearing on the motion [for summary judgment]. However, upon motion of any party made no later than ten (10) days after the response was filed or was due, the court shall conduct a hearing on the motion . . . ."). Even on summary-judgment motions a right to a hearing arises only if one of the parties specifically requests the hearing. But here, Wiggles made no motion for a hearing before or after the trial court ruled. Additionally, Wiggles's position was considered by the trial court because she filed a response to the motion to strike before the hearing on the motion for judgment on the pleadings was held. Appellant's App. p. 56.

### B. The Merits of the Motion to Strike

Wiggles also argues that the trial court erred in granting U-Stor's motion to strike her affidavit. Under Trial Rule 56(E), an affidavit must set forth "such facts as would be admissible in evidence . . . ."[1]

---

[1] We consider Wiggles's motion to strike under Trial Rule 56(E) because if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ." Ind. Trial Rule 12(C). The admission of Wiggles's affidavit would require U-Stor's motion to be treated as a motion for summary judgment. Therefore, we must look to Indiana Trial Rule 56 to determine whether her affidavit should be stricken.

7

The interpretation of a contract is a question of law, which we review de novo. *Westfield Cos. v. Knapp*, 804 N.E.2d 1270, 1273-74 (Ind. Ct. App. 2004), *reh'g denied*, *trans. denied*. When interpreting a contract, "[t]he unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts." *Trustcorp Mortg. Co. v. Metro Mortg. Co., Inc.*, 867 N.E.2d 203, 212 (Ind. Ct. App. 2007) (quoting *Whitaker v. Brunner*, 814 N.E.2d 288, 293 (Ind. Ct. App. 2004), *trans. denied*), *reh'g denied*. "[A] contract will be found to be ambiguous only if reasonable persons would differ as to the meaning of its terms." *Vincennes Univ. ex rel. Bd. of Trs. of Vincennes v. Sparks*, 988 N.E.2d 1160, 1165 (Ind. Ct. App. 2013), *trans. denied*. Therefore, if the contract is unambiguous, "the parties' intent will be determined from the four corners of the contract." *Id.* We may not look to extrinsic evidence to add to, vary, or explain the terms of a contract. *Cooper v. Cooper*, 730 N.E.2d 212, 215 (Ind. Ct. App. 2000).

Here the "Indemnity and Hold Harmless" clause states, in relevant part, that, "Occupant further agrees to indemnify and hold Owner and Owner of the storage facility harmless from any claim or lawsuit based on or arising from any negligent act and/or omission by Owner and/or Owner of the facility or any of their employees, agents or representatives." The trial court determined that the indemnity-and-hold-harmless clause was unambiguous. Appellant's App. p. 81.

We agree with the trial court. The rental agreement is clear that Wiggles agreed to hold U-Stor harmless and indemnify it from any negligence claim committed by U-Stor, its employees, agents, or representatives. Because we have determined that the contract is unambiguous, we may only look to the contract itself to determine the parties' intent.

8

Throughout Wiggles's affidavit, she makes statements about her intent and belief when she signed the contract. *Id.* at 42-43. Such evidence is not admissible and not relevant when a contract is unambiguous. Ind. Trial Rule 56(E) ("Supporting and opposing affidavits . . . shall set forth such facts that would be admissible in evidence . . . ."). Because Wiggles's affidavit contained only inadmissible evidence, the trial court did not abuse its discretion by granting U-Stor's motion to strike Wiggles's affidavit.

## II. Judgment on the Pleadings

Wiggles also argues that the trial court erred when it granted U-Stor's motion for judgment on the pleadings. Specifically, she argues that the provision is an indemnity agreement rather than an exculpatory clause, the scope of the clause is overly broad and should be limited, and the clause is void against public policy.

A motion for judgment on the pleadings under Indiana Trial Rule 12(C) is reviewed de novo. *Consolidated Ins. Co. v. Nat'l Water Servs., LLC*, 994 N.E.2d 1192, 1196 (Ind. Ct. App. 2013) (citing *Murray v. City of Lawrenceburg*, 925 N.E.2d 728, 731 (Ind. 2010)), *trans. denied.* We must accept as true the well-pleaded material facts alleged in the complaint and base our ruling solely on the pleadings. *Id.* We may grant a Trial Rule 12(C) motion only "'where it is clear from the face of the complaint that under no circumstances could relief be granted.'" *Id.* (quoting *Forte v. Connerwood Healthcare, Inc.*, 745 N.E.2d 796, 801 (Ind. 2001)). In reviewing a Trial Rule 12(C) motion, we may consider only the pleadings, with all well-pleaded material facts alleged in the complaint deemed admitted, and any facts of which we may take judicial notice. *Fox Dev., Inc. v. England*, 837 N.E.2d 161, 165 (Ind. Ct. App. 2005). The "pleadings" consist of a

9

complaint and an answer. Ind. Trial Rule 7; *Consolidated Ins. Co.*, 994 N.E.2d at 1196. They also consist of "any written instruments attached to a pleading, pursuant to Trial Rule 9.2." *Consolidated Ins. Co.*, 994 N.E.2d at 1196.

The construction of a contract presents a pure question of law and is reviewed de novo. *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 251 (Ind. 2005). When interpreting a written contract, we attempt to determine the parties' intent when the contract was made. *Whitaker v. Brunner*, 814 N.E.2d 288, 294 (Ind. Ct. App. 2004). We do this by examining the language used in the contract to express their rights and duties. *Id.* We read the contract as a whole and will attempt to construe the contractual language so as not to render any words, phrases, or terms ineffective or meaningless. *Id.* Moreover, we must accept an interpretation of the contract that harmonizes its provisions, rather than one that places them in conflict. *Id.*

Wiggles makes three arguments as to why the trial court should not have granted judgment on the pleadings. First, Wiggles argues that paragraph 20 is an indemnity clause rather than an exculpatory clause. An exculpatory clause in a contract covers the risk of harm sustained by the party in the contract who releases the other party in the contract. *Morris v. McDonald's Corp.*, 650 N.E.2d 1219, 1222 (Ind. Ct. App. 1995). By executing the exculpatory clause, the releasing party is prevented from recovering from the released party for the released party's negligence. *Id.* An example of an exculpatory clause is when a person rafts with a whitewater-rafting company and executes an agreement releasing the whitewater-rafting company from its own negligence, the rafting company will not be liable to the participant even if it is negligent. In contrast, an indemnity clause proscribes

10

who bears the risk of harm sustained by third persons caused by either party to the contract. *Id.* It shifts the financial burden for the ultimate payment of damages sustained by the third party to the releasing party. *Id.* An example of an indemnity clause is when a subcontractor agrees to build a roof for a contractor who has contracted to build a house for the owner of the house and the subcontractor agrees to reimburse the contractor if the owner sues the contractor for a deficiency in the roof. Under an indemnity clause, the subcontractor must reimburse the contractor if the contractor is sued by the owner.

Although Wiggles argues that paragraph 20 is an indemnity clause, its designation as an indemnity clause does not mean that it may not also be an exculpatory clause. We addressed a similar argument in *City of Hammond v. Plys*, 893 N.E.2d 1 (Ind. Ct. App. 2008). In that case, the contract stated that Plys "agrees to indemnify and hold harmless . . . the City of Hammond, Indiana which is caused by an act or omission, whether negligent, intentional or otherwise, of an employee, representative, or agent of the . . . City of Hammond." *Id.* at 3. On appeal, we stated that "[a]lthough the third sentence of the release uses the word indemnity, it is not solely an indemnity clause and it clearly indicated that Plys will 'hold harmless' the Hammond defendants." *Id.* at 4; *see also U.S. Auto Club, Inc. v. Smith*, 717 N.E.2d 919, 923 (Ind. Ct. App. 1999) (holding that a provision requiring plaintiff to "indemnify and hold harmless [the defendants] from loss, liability damage or cost they may incur due to the presence of the undersigned in or upon the restricted area, whether caused by the negligence of [the defendants] or otherwise" prevented the plaintiff from recovering against the defendants for injuries caused by the defendants' negligence), *trans. denied*.

11

The language of paragraph 20 is similar to the language in both *City of Hammond* and *U.S. Auto Club, Inc*. In paragraph 20 of the agreement, Wiggles specifically agreed to "indemnify and hold harmless [U-Stor] from any claim or lawsuit based on or arising from any negligent act and/or omission . . . ." Appellant's App. p. 13, 16. Because the provision includes the term "hold harmless," we construe it to be both an indemnity and an exculpatory clause.

Second, Wiggles argues that the exculpatory clause does not apply to the injuries she suffered because they occurred at the door of the owner's facility rather than at one of the storage units she rented. She also argues that the clause is vague and overly broad because "the language, as written, if not limited to injuries arising from the storage unit itself, is so broad that it could be used to require [Wiggles] to indemnify [U-Stor] and its staff for their negligence which is totally unrelated to the owner's facility." Appellant's Br. p. 9. Additionally, she argues that "even if [she were] run over by [U-Stor's] owner, employees, agents or representatives on the other side of town," she would not be able to recover. *Id.* at 9-10.

U-Stor cites *City of Hammond* and *U.S. Auto Club, Inc.* for support. We agree with Wiggles that both cases are distinguishable when considering the scope of the clause in question. In both cases, the exculpatory clauses limit the scope of negligence for which the other party cannot be sued. *City of Hammond*, 893 N.E.2d at 2 (clause requires Plys to hold the City of Hammond harmless for negligence resulting from "any contact, game, function, exercise, competition, or any other activity operating, organized, arranged, or sponsored by the City of Hammond"); *U.S. Auto Club, Inc.*, 717 N.E.2d at 921 (clause

12

requires Smith to hold U.S. Auto Club, Inc. harmless for the negligence incurred to his presence "*in or upon the restricted area*"). In contrast, here, the exculpatory clause merely states that Wiggles agrees to hold U-Stor harmless "from any claim or lawsuit based on or arising from any negligent act and/or omission by Owner and/or Owner of the facility or any of their employees, agents or representatives." Appellant's App. p. 13, 16.

However, because the contract is an unambiguous release of U-Stor's negligence, we must determine the meaning from the four corners of the document. Individual clauses in contracts cannot be read in isolation, and we must look at the contract as a whole. *Whitaker*, 814 N.E.2d at 294. Here, the first sentence in paragraph 20 generally states that Wiggles agrees to hold U-Stor harmless for any cause of action "arising directly or indirectly from this Agreement or any renewal or extension thereof." *Id.* The second and third sentences in paragraph 20 illustrate specific types of claims to which the provision applies. The third sentence specifies that those claims include the negligence of U-Stor or its employees. Thus, we conclude that, although not specifically stated in the third sentence, the exculpation of U-Stor's negligence applies only to the negligence that would arise directly or indirectly from the performance of the rental agreement. This interpretation does not specifically limit the scope of the hold-harmless agreement to injuries occurring at the storage units rented by Wiggles. The payment of rent is an obligation that arises directly from this agreement. Because the payment of rent arises directly from the rental agreement, the exculpatory clause applies to the payment of rent.

Finally, Wiggles argues that the exculpatory clause is void as against public policy because it is not limited to injuries occurring at the storage unit. It is well settled that

exculpatory clauses are not against public policy. *Wabash Cnty. Young Men's Christian Ass'n, Inc. v. Thompson*, 975 N.E.2d 362, 366 (Ind. Ct. App. 2012), *reh'g denied*, *trans. denied*. These contracts are permissible as long as they are knowingly and willingly made and free from fraud. *Gen. Bargain Ctr. v. Am. Alarm Co.*, 430 N.E.2d 407, 411-12 (Ind. Ct. App. 1982). However, a contract will be void as against public policy when "the parties have unequal bargaining power, the contract is unconscionable, or the transaction affects the public interest such as utilities, carriers, and other types of businesses generally thought to be suitable for regulation or which are thought of as a practical necessity for some members of the public." *Id.*

Here, Wiggles does not argue that any of these exceptions exist. Instead, she argues, without citing any case law, that the clause in paragraph 20 "is so broad and vague as to be against public policy." Appellant's Br. p. 9.

However, this Court has upheld exculpatory clauses worded similarly to the clause in paragraph 20 as not void against public policy. *Center Tp. of Porter Cnty. v. City of Valparaiso*, 420 N.E.2d 1272, 1275 (Ind. Ct. App. 1981) (holding that a clause stating that the City "shall be held harmless for any and all negligence . . . resulting under its performance of this contract, whether or not caused by or resulting from the activity of the . . . Fire Department or any other participating agency or department or official of the City of Valparaiso, Indiana" did not violate public policy).

Here, Wiggles knowingly and willingly entered into this agreement to rent two storage units. There is also no evidence of fraud. Additionally, none of the exceptions exist that would cause the contract to be void as against public policy.

We conclude that Wiggles was not improperly denied a hearing on U-Stor's motion to strike Wiggles's affidavit and the trial court correctly granted U-Stor's motion to strike because her affidavit contained only inadmissible extrinsic evidence. We also conclude that the trial court correctly granted U-Stor's motion for judgment on the pleadings because paragraph 20 contained a valid and enforceable exculpatory clause.

Affirmed.

RILEY, J., and MAY, J., concur.