# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 23 2020, 9:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Sandra L. Blevins
Jamie A. Maddox
Betz + Blevins
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Curtis T. Hill, Jr.
Attorney General

Benjamin M. L. Jones
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

John Fenicle,

*Appellant-Plaintiff / Petitioner,*

v.

Indiana School for the Deaf; Indiana School for the Deaf Board; Ed Clere, Individually and in his Official Capacity; Ann Reifel, Individually and in her Official Capacity; Kelly Dibenedetto, Individually and in her Official Capacity; Traci Tetrick, Individually and in her Official Capacity; Ray Furner, Individually and in his Official Capacity; Lucy Witte,

December 23, 2020

Court of Appeals Case No.
20A-CT-940

Appeal from the
Marion Superior Court

The Honorable
Timothy W. Oakes, Judge

Trial Court Cause No.
49D02-1707-CT-26570

Individually and in her Official Capacity; Dr. David Geeslin, Individually and in his Official Capacity; The State Employees' Appeals Commission; and Gabriel Paul, Individually and in his Official Capacity,

*Appellees-Defendants/Respondents*

**Vaidik, Judge.**

# Case Summary

[1] John Fenicle appeals the trial court's judgment against him in this action arising from his termination as a teacher at the Indiana School for the Deaf ("the School"). We affirm.

# Facts and Procedural History

[2] Fenicle began working as a teacher for the School in 2000. He was an "unclassified" state employee. *See* Appellant's App. Vol. IV p. 14. Such an employee is "an employee at will and serves at the pleasure of the employee's appointing authority" and "may be dismissed, demoted, disciplined, or transferred for any reason that does not contravene public policy." Ind. Code § 4-15-2.2-24.

[3] Late 2015 was a tumultuous time for Fenicle. He filed multiple complaints claiming students in his classes were being disruptive, and the mother of one of those students—another employee of the School—filed her own complaint against him. In December 2015, the School suspended Fenicle without pay because "[a] complaint, which involves students, has recently been lodged, and requires investigation." Appellant's App. Vol. IV p. 18. Three weeks later, the School terminated Fenicle's employment in a letter that stated, in part:

> As stated in the ISD Staff Handbook, a safe, secure, inviting and healthy school environment is essential to learning. All students have a right to have their individual needs met through learning opportunities that promote optimum success and independence. Your failure to provide students with this required support after repeatedly being given the direction and tools to do so is unacceptable. This is the reason for this disciplinary action.

*Id.* at 19. Students and behavioral specialists had reported that in Fenicle's classes students "rarely used a textbook," "[t]ests did not look similar to what they learned in class," and Fenicle "was on the computer all the time," "rarely helped" students, "often gave wrong answers," "ignored" students, "moved on with the lessons without pausing to attend students' questions about math problems," and would start "a new lesson one day and then drop the new lesson [the] next day." Appellant's App. Vol. V pp. 219-22. A school psychologist reported Fenicle failed to meet with him about one student's Individualized Education Program and resisted providing accommodations to another student. *Id.* at 229.

[4] Fenicle denied the allegations against him and appealed his termination to the State Employees' Appeals Commission (SEAC). He alleged his termination was "unlawful" because it was not really based on his job performance but rather on (1) the fact he "repeatedly complained to individuals" at the School "regarding the behavioral issues he was confronting" with certain students and (2) "his work with the Indiana Department of Education on the ASL [American Sign Language] Assessment," which was against the wishes of Interim Principal Dawniela Patterson. Appellant's App. Vol. IV pp. 12-13.[1] He also claimed his "due process rights were violated by the Indiana School for the Deaf based upon its lack of a proper investigation involving allegations made by students against [him] as well as a lack of investigation of the complaints [he] made against students." *Id.* at 13. In addition, he claimed the School "failed to pay all monies owed" to him. *Id.* The School eventually moved for summary judgment, which the SEAC granted in June 2017.

[5] Fenicle then filed a combined complaint and petition for judicial review in Marion Superior Court, naming eleven defendants: the School; the School Board; six members of the School Board in their individual and official capacities; Dr. David Geeslin, the School's CEO/Superintendent, individually and in his official capacity; the SEAC; and the SEAC's administrative law judge, Gabriel Paul, individually and in his official capacity. Count I was a

---

[1] Fenicle also claimed he was terminated because he is deaf, in violation of the Americans with Disabilities Act. He later abandoned that claim.

claim under 42 U.S.C. § 1983, alleging the defendants "intentionally and/or recklessly failed to employ sufficient procedural safeguards to ensure the adequate preservation of Mr. Fenicle's property interest in his employment," Appellant's App. Vol. II p. 119, in violation of Fenicle's rights to procedural and substantive due process under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Count II was a petition for judicial review of the SEAC's decision.

On Fenicle's Section 1983 claim, the institutional defendants—the School, the School Board, and the SEAC—moved for dismissal, and the individual defendants moved for judgment on the pleadings. The trial court granted both motions. Fenicle and the School then filed briefs on the petition for judicial review. The trial court denied Fenicle's petition, allowing the SEAC's decision to stand.

Fenicle now appeals.

# Discussion and Decision

Fenicle contends the trial court erred by granting the individual defendants judgment on the pleadings on his claims under Section 1983 (he does not challenge the dismissal of his Section 1983 claims against the School, the School Board, and the SEAC). He also appeals the trial court's denial of his petition for judicial review of the SEAC's decision.

# I. Section 1983

We review de novo a trial court's ruling on a motion for judgment on the pleadings. *Murray v. City of Lawrenceburg*, 925 N.E.2d 728, 731 (Ind. 2010). "We accept as true the well-pleaded material facts alleged in the complaint, and base our ruling solely on the pleadings." *Id.* Such a motion is to be granted only where it is clear from the face of the complaint that under no circumstances could relief be granted. *Id.* The moving party is deemed to have admitted the well-pleaded facts favoring the nonmovant, and we will draw all reasonable inferences in favor of the nonmovant. *Bettenhausen v. Godby*, 878 N.E.2d 1277, 1278 (Ind. Ct. App. 2008).

In his claim under Section 1983, Fenicle alleged the defendants violated his rights to procedural due process and substantive due process under the Due Process Clause of the Fourteenth Amendment to the United State Constitution. The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. As a threshold matter, then, a plaintiff claiming a violation of the Due Process Clause—either the procedural component or the substantive component—must have been deprived of "life, liberty, or property." *See Bankhead v. Walker*, 846 N.E.2d 1048, 1053 (Ind. Ct. App. 2006) (procedural due process); *Swami, Inc. v. Lee*, 841 N.E.2d 1173, 1180 (Ind. Ct. App. 2006) (substantive due process), *trans. denied*. Fenicle claims he had, and was deprived of, a "property interest in his employment." Appellant's Br. p. 32. The defendants argue he had no such interest. We agree with the defendants.

[11] The United States Supreme Court has explained that to have a property interest in employment, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Property interests are not created by the federal constitution. *Id.* "Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

[12] Again, Fenicle was an "unclassified" employee of the state, and such an employee is "an employee at will and serves at the pleasure of the employee's appointing authority" and "may be dismissed, demoted, disciplined, or transferred for any reason that does not contravene public policy." I.C. § 4-15-2.2-24. "As a general rule, an employee at will has no property interest in further employment." *Phegley v. Ind. Dep't of Highways*, 564 N.E.2d 291, 295 (Ind. Ct. App. 1990), *trans. denied*. The defendants assert that as an unclassified, at-will employee, Fenicle "had no property interest in his employment protected by the due process clause," and his "allegations concerning [the School's] investigation and its procedure for his dismissal warrant no relief." Appellees' Br. p. 28. In his reply brief, Fenicle offers no response to this argument. Because Fenicle did not have a property interest in his employment and has not otherwise alleged a deprivation of life, liberty, or property, his rights under the Due Process Clause of the Fourteenth Amendment were not

implicated, let alone violated, by his termination. Therefore, we affirm the trial court's grant of judgment on the pleadings on his claim under Section 1983.[2]

## II. Petition for Judicial Review

[13] Fenicle also contends the trial court erred by denying his petition for judicial review of the SEAC's decision. We review an agency action directly, applying the same standard as the trial court and giving no deference to its decision. *Baliga v. Ind. Horse Racing Comm'n*, 112 N.E.3d 731, 736 (Ind. Ct. App. 2019), *reh'g denied*, *trans. denied*. A court can reverse an agency action only if it is:

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence.

Ind. Code § 4-21.5-5-14(d). "The burden of demonstrating the invalidity of agency action is on the party to the judicial review proceeding asserting invalidity." *Id.* at (a).

[14] Fenicle argues the SEAC's order granting summary judgment to the School and upholding his termination was arbitrary and capricious for three reasons. First,

---

[2] Fenicle cites the United States Supreme Court's holding that "the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment[.]" *Conn v. Gabbert*, 526 U.S. 286, 291-92 (1999). But he has only been terminated from a single teaching position, not completely barred from the teaching "field." He makes no argument to the contrary.

he says he had a "statutory duty" under the federal Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400-1482, to ensure his students were receiving a "free appropriate public education," or "FAPE," his complaints about disruptive students were an effort to satisfy that duty, and he was terminated for making those complaints. Appellant's Br. p. 40. Second, he asserts, "The School's sham investigations of complaints made by Fenicle about several disruptive students as well as the School's sham investigation of a single complaint made about Fenicle violated Fenicle's Due Process Rights." *Id.* at 43. Third, he claims he was terminated "in retaliation for his work with the Indiana Department of Education on the ASL Assessment." *Id.* at 45. The SEAC and the trial court rejected all three arguments, and so do we.

[15] Fenicle's due-process claim fails for the same reason his Section 1983 due-process claims fail: he did not have a "property interest" in his at-will employment. *See* Part I, *supra*. Regarding his FAPE and retaliation claims, we begin by reiterating that an unclassified state employee is "an employee at will and serves at the pleasure of the employee's appointing authority" and "may be dismissed, demoted, disciplined, or transferred for any reason that does not contravene public policy." I.C. § 4-15-2.2-24. This follows Indiana's employment-at-will doctrine, "under which employment may be terminated by either party at will, with or without reason." *Wior v. Anchor Indus., Inc.*, 669 N.E.2d 172, 175 (Ind. 1996), *reh'g denied*. The "public policy" exception to this doctrine protects an at-will employee from being terminated for "exercising a

clear statutory right or obeying a legal duty." *Perkins v. Mem'l Hosp. of S. Bend*, 141 N.E.3d 1231, 1235 (Ind. 2020).

[16]     In support of his claim he was terminated for trying to satisfy his alleged statutory duty to provide his students a FAPE, Fenicle asserts:

> Because Fenicle was concerned about a few select students' disruptive behavior affecting the educational needs of the non-disruptive students, Fenicle filed complaints about these students beginning in November of 2015, including complaints about Student A. In response, Student A's mother, who is also an employee of the School, filed an unfounded, baseless complaint against Fenicle.

Appellant's Br. p. 43. As an initial matter, Fenicle cites nothing in the record indicating that Student A's mother filed her complaint about him "in response" to Fenicle's complaints about the disruptive students, let alone that the School terminated him because of those complaints. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring that each contention in the argument section of the appellant's brief be supported by citations to "the Appendix or parts of the Record on Appeal relied on"). But even if the School terminated Fenicle for making the complaints, i.e., for trying to ensure his students were receiving a FAPE, Fenicle has not cited any specific provision of the IDEA in support of his claim that he, as a teacher, had a personal duty to provide a FAPE. Our research suggests that this duty lies with the states that accept IDEA funds and schools themselves, not individual teachers. *See* 20 U.S.C. § 1412(a)(1) (providing that for "**[a] State**" to be eligible for assistance under the IDEA it

must ensure "[a] free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21" (emphasis added)); *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. 988, 999 (2017) ("To meet its substantive obligation under the IDEA, **a school** must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." (emphasis added)). Because Fenicle has not established that he had a legal duty to provide his students a FAPE, even if he was terminated for trying to provide a FAPE, it cannot be said that he was terminated for "obeying a legal duty," as required under the public-policy exception to the employment-at-will doctrine. *See Perkins*, 141 N.E.3d at 1235.

[17] As for his claim he was terminated in retaliation for his work with the Indiana Department of Education on an ASL assessment, Fenicle argues:

> Although Fenicle had worked with the DOE for several years, Ms. Patterson did not want Fenicle to work directly with the DOE on assessments, but, instead, wanted Fenicle to only be a representative for the School. Ms. Patterson and others at the School wanted to create the School's own ASL standards and curriculum without the DOE's involvement, and Fenicle had worked closely with the DOE on ASL standards for years. Fenicle's work with the DOE, however, would jeopardize the School's desire to remain free from the DOE's involvement. The School was concerned with its accreditation status with the DOE as the School recently admitted that it needed to work on certain programs[.]

Appellant's Br. pp. 45-46 (record citations omitted). For purposes of this discussion, we can assume Fenicle was terminated because of his work with the DOE, as opposed to the in-class issues referenced in his termination letter. The problem with Fenicle's argument is it does not include a single citation to legal authority. *See* App. R. 46(A)(8)(a) (requiring that each contention in the argument section of an appellant's brief be supported by citations to the authorities relied on). More specifically, Fenicle fails to establish that he had a "statutory right" or a "legal duty" to work with the DOE. *See Perkins*, 141 N.E.3d at 1235. Therefore, even if Fenicle was terminated because of that work, his termination does not fall within the public-policy exception to the employment-at-will doctrine, and the SEAC properly rejected Fenicle's retaliation claim.

[18] Fenicle also argues the SEAC should have ordered the School to pay him (1) $21,087.12 for unused vacation, sick, and personal time, (2) $42.86 for one hour of compensatory time, and (3) $6,455.04 in "spread payments" for "his employment from August 18, 2015 to December 14, 2016," because "[t]he School spread Fenicle's paychecks over 26 pay periods, rather than 19 pay periods; thus, he has been paid less than he should have been." Appellant's Br. pp. 47-48. Regarding vacation, sick, and personal time, a regulation of the State Personnel Department provides that "[a] dismissed employee shall forfeit all accrued sick, personal, and vacation leave." 31 Ind. Admin. Code 5-12-3(d). Fenicle acknowledges this regulation but contends it does not apply because he was "unlawfully terminated." Appellant's Reply Br. p. 16. His claims for

compensatory time and "spread payments" are also based on the premise that his termination was unlawful. Appellant's Br. pp. 47-48; Appellant's Reply Br. pp. 15-16. Because the SEAC correctly concluded Fenicle's termination was not unlawful, his claims for payment necessarily fail.

[19] Affirmed.

Bailey, J., and Weissmann, J., concur.